[No. S041974. Feb. 29, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIA E. NASALGA, Defendant and Appellant.

## COUNSEL

E. Evans Young, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Margo J. Chinn-Yu, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—In 1992 the Legislature amended Penal Code[1] section 12022.6, subdivisions (a) and (b), effective June 30, 1992, to increase the amount of the property loss required for a one-year enhancement from $25,000 to $50,000 and to increase the loss required for a two-year enhancement from $100,000 to $150,000. (Stats. 1992, ch. 104, § 1.) In this case we address the question of whether a person who stole $124,000 (§ 487, subd. (b)(3)) before the 1992 amendment of section 12022.6, but whose conviction was not final at the time the amendment became operative, is entitled to the benefit of the 1992 amendment and is, therefore, eligible only for the one-year enhancement. Pursuant to *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] and *In re Kirk* (1965) 63 Cal.2d 761 [48 Cal.Rptr. 186, 408 P.2d 962], we answer this question in the affirmative. We therefore reverse the judgment of the Court of Appeal.

[1]Unless otherwise noted, all statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 1993, defendant, Maria E. Nasalga, was charged with felony grand theft in violation of section 487, subdivision (1) (now subdivision (b)(3)). Pursuant to section 12022.6, subdivision (b), the information also alleged the victim's loss exceeded $100,000. The charged offense was committed between April 25, 1990, and July 28, 1991. During that time defendant, who was employed as the office manager and bookkeeper for a property management company, deposited rent checks into her personal bank account. Pursuant to a negotiated disposition, defendant pleaded guilty to grand theft on February 25, 1993. As part of the plea bargain, she waived jury trial and agreed to a court trial on the truth of the enhancement. Defendant admitted taking $90,000 worth of checks, but the prosecution presented evidence the checks she took were worth $124,000. The court found she had stolen $124,000 worth of checks. On August 9, 1993, the court sentenced defendant to the lower base term of sixteen months for grand theft, plus a consecutive two-year enhancement under section 12022.6, subdivision (b), for a total state prison term of three years and four months.

At the time of defendant's offense, between April 25, 1990, and July 28, 1991, section 12022.6, subdivision (b) provided in pertinent part: "If the loss exceeds one hundred thousand dollars ($100,000), the court shall in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted impose an additional term of two years."[2] Effective June 30, 1992, the Legislature amended the statute

---

[2]Until June 30, 1992, section 12022.6 provided, in full: "When any person takes, damages, or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage or destruction, the court shall impose an additional term as follows:

"(a) If the loss exceeds twenty-five thousand dollars ($25,000), the court shall in addition and consecutive to the punishment prescribed for the felony or the attempted felony of which the defendant has been convicted impose an additional term of one year.

"(b) If the loss exceeds one hundred thousand dollars ($100,000), the court shall in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted impose an additional term of two years.

"In any accusatory pleading involving multiple charges of taking, damage, or destruction, the additional terms provided in this section may be imposed if the aggregate losses to the victims from all felonies exceed the amounts specified in this section. All pleadings under this section remain subject to the rules of joinder and severance stated in Section 954.

"The additional terms provided in this section shall not be imposed unless the facts of the taking, damage, or destruction in excess of the amounts provided in this section are charged in the accusatory pleading and admitted or found to be true by the trier of fact.

"This section applies to, but is not limited to, property taken, damaged, or destroyed in violation of Section 502 or subdivision (b) of Section 502.7.

"(c) This section shall remain in effect only until July 1, 1992, and as of that date is repealed unless a later enacted statute, which is enacted before July 1, 1992, deletes or extends that date." (Stats. 1990, ch. 1571, § 1, pp. 7492-7493.)

to increase the threshold loss required for the two-year enhancement from $100,000 to $150,000 and the threshold loss required for the one-year enhancement from $25,000 to $50,000.[3] Even though, at the time defendant was sentenced, a theft of $124,000 made a defendant eligible only for a one-year enhancement, the trial court, without objection, imposed a two-year enhancement under the former version of the statute. The record is silent as to whether the parties knew the section had been amended between the time of the offense and the time of trial. ▆▆ ▬ ▬ We granted review to decide whether a defendant, whose conviction is not final at the time the law changed, is entitled to the benefit of the lesser punishment provided in the amended version of section 12022.6, subdivision (b).[4]

DISCUSSION

I

▆▆ ▆▆ ▬ ▬ Defendant argues because section 12022.6 was amended prior to final judgment in her case,[5] and because the amendment *reduces* the punishment for stealing $124,000 from two years to one, she is

---

[3]In addition, section 12022.6 was amended to continue to permit aggregation of losses if the losses arose from a common scheme or plan (originally, the subdivision permitting aggregation of losses "sunsetted" unless a new statute was enacted before July 1, 1992), and to add a new three-year enhancement for losses in excess of $1 million (subd. (c)) and a new four-year enhancement for losses in excess of $2.5 million (subd. (d)). Subdivision (e) was added, providing:

"(e) It is the intent of the Legislature that the provisions of this section be reviewed within five years to consider the effects of inflation on the additional terms imposed. For that reason, this section shall remain in effect only until January 1, 1998, and as of that date is repealed unless a later enacted statute, which is enacted before January 1, 1998, deletes or extends that date." (Stats. 1992, ch. 104, § 1).)

[4]The issue of waiver has not been raised or briefed by the parties, either in this court or in the Court of Appeal. However, if we agree with defendant, it follows that her sentence under section 12022.6 was unauthorized. A sentence is unauthorized when it could not lawfully be imposed under any circumstance in the particular case: "[L]egal error resulting in an unauthorized sentence commonly occurs where the court violates mandatory provisions governing the length of confinement." (*People* v. *Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040], fn. omitted.) As we recently reaffirmed, the concept of an unauthorized sentence constitutes an established exception to the "general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal." (*Ibid.*)

[5]In *In re Pedro T.* we cited with approval a case holding that, for the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1046 [36 Cal.Rptr.2d 74, 884 P.2d 1022], citing *In re Pine* (1977) 66 Cal.App.3d 593, 594 [136 Cal.Rptr. 718]; see also *Bell* v. *Maryland* (1964) 378 U.S. 226, 230 [12 L.Ed.2d 822, 826, 84 S.Ct. 1814] ["The rule applies to any such [criminal] proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it."].)

entitled to the benefit of the amendatory statute. She notes the statute contains no saving clause and that nothing in its legislative history indicates an intent to make its application prospective only. In support of her position, defendant argues this case is governed by *In re Estrada, supra,* 63 Cal.2d 740 (*Estrada*), where we held "[i]f the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies." (*Id.* at p. 744.) Defendant also asserts her case is factually identical to *In re Kirk, supra,* 63 Cal.2d 761 (*Kirk*), a case we decided the same day as *Estrada.* In *Kirk*, after defendant was convicted of issuing checks with insufficient funds, but before the judgment was final, the Legislature amended the statute that prescribed the punishment for the offense (§ 476a, subd. (b)), raising the dollar amount required for a maximum of one year's imprisonment in the county jail from $50 to $100, and eliminating a state prison term for the crime. We held the defendant, convicted of issuing checks for a total of $75 without sufficient funds, was entitled to the benefit of the amendment, and could be subject to imprisonment only in the county jail and not to confinement in state prison. (*Kirk, supra,* 63 Cal.2d at pp. 762-763.)

The People maintain the absence of a saving clause is not determinative. They argue *In re Pedro T., supra,* 8 Cal.4th 1041 (*Pedro T.*), rather than *Estrada*, governs, and we should, therefore, deny defendant the benefit of the amended statute. At issue in *Pedro T.* was a statute temporarily enhancing punishment for vehicle theft. Although the statute increasing punishment was in effect at the time of the minor's offense, it expired before his conviction was final, resulting in reinstatement of the former, more lenient sentencing provision. (See Veh. Code, § 10851.) In determining whether the minor could properly be sentenced under the temporarily increased penalty provision, we looked to legislative intent. Central to our analysis was the Legislature's explicit statement that its purpose in enacting the experimental statute was to punish offenders more harshly: " 'The Legislature finds and declares that the rapid increase in motor vehicle theft has reached crisis proportions . . . . [T]he escalating problem of vehicle theft is nurtured by the lack of any serious deterrent to this crime. . . . [¶] . . . [T]he Legislature believes that it is in the best interest for public safety to enhance the penalties for the crimes of vehicle theft and receiving stolen vehicles.' " (Stats. 1989, ch. 930, § 1, pp. 3246-3247, as quoted in *Pedro T., supra,* 8 Cal.4th at p. 1046.) From this we concluded the Legislature's intent in enacting the temporary sentence increases was plain: "to punish, more severely than before, persons who committed vehicle-taking within a three-year period." (*Pedro T., supra,* at p. 1048.)

We distinguished this stated intent from the legislative intent discerned in cases governed by *Estrada*: "Ordinarily," we observed, "when an amendment lessens the punishment for a crime one may reasonably infer the

Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest." (*Pedro T. supra*, 8 Cal.4th at p. 1045.) Here, by contrast, "[f]ar from determining that a *lesser* punishment for vehicle theft would serve the public interest, the Legislature expressly declared that *increased* penalties were necessary. *Estrada* is not implicated on these facts." (*Pedro T., supra*, 8 Cal.4th at p. 1046, first italics added.) Thus, to effectuate the Legislature's intent, in *Pedro T.* we held the more lenient penalty statute should not be applied retroactively. (*Id.* at p. 1052.) Therefore, a person who committed the offense of vehicle theft during the three-year experiment in enhanced penalties, but whose conviction did not become final until after the statute's sunset date, could be sentenced under the statute requiring stricter punishment, because "[a]pplication of the temporarily increased penalties . . . advances the purpose the Legislature sought to achieve." (*Ibid.*)

With the parties' respective contentions in mind, we turn now to the application of section 12022.6 to defendant's offense.

## II

Our analysis of the instant case necessarily begins with consideration of the holdings of *Estrada, Kirk,* and *Pedro T.* At issue in *Estrada* was an amendment reducing the statutory punishment for the crime of escape. At the time the petitioner in *Estrada* escaped, the offense was punishable by at least one year in prison, to start when the defendant would otherwise be discharged from prison. (Former § 4530.) In addition, at the time the petitioner in *Estrada* escaped, former section 3044 provided no person convicted of an escape could be paroled until he had served at least two calendar years after his return to prison following the escape conviction. (*Estrada, supra*, 63 Cal.2d at pp. 742-743.) After the petitioner's commission of the offense, but before his conviction and sentence, the Legislature amended sections 3044 and 4530 to reduce the penalties for escapes committed without force or violence. The petitioner in *Estrada* argued he was entitled to the benefit of the ameliorative amendments.

We agreed. Disapproving an earlier decision, *People* v. *Harmon* (1960) 54 Cal.2d 9 [4 Cal.Rptr. 161, 351 P.2d 329], we held the punishment provided by the amendatory act should be imposed. (*Estrada, supra*, 63 Cal.2d at p. 742.) "The problem," we stated, "is one of trying to ascertain the legislative intent." (*Id.* at p. 744.) Lacking an express statement of intent, we found one consideration of paramount importance: "When the Legislature amends a statute so as to lessen the punishment, it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper

as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Id.* at p. 745; see also *Pedro T., supra,* 8 Cal.4th at p. 1045.)[6] We found the legislative intent to apply the ameliorative amendatory act retroactively "obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada, supra,* 63 Cal.2d at p. 745.)[7]

Thus, *Estrada* stands for the proposition that, "where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (*Estrada, supra,* 63 Cal.2d at p. 748.) To ascertain whether a statute should be applied retroactively, legislative intent is the "paramount" consideration: "Ordinarily, when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest." (*Pedro T., supra,* 8 Cal.4th at p. 1045.)

The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301 [279 Cal.Rptr. 592, 807 P.2d 434] [death penalty special circumstances]; see also *People v. Figueroa* (1993) 20 Cal.App.4th 65, 69-71 [24 Cal.Rptr.2d 368] [drug trafficking near school yards]; *People v. Todd* (1994) 30 Cal.App.4th 1724, 1729-1730 [36 Cal.Rptr.2d 774] [same]; *People v. Vasquez* (1992) 7 Cal.App.4th 763,

---

[6]We noted in *Estrada* the facts presented a stronger case for relief than the facts in *Harmon,* because the amendment reducing punishment did not become effective until *after* the defendant in *Harmon* was tried, convicted, and sentenced, whereas the ameliorative amendment in *Estrada,* although passed after the crime was committed, became effective *before* trial, conviction or sentence. (*Estrada, supra,* 63 Cal.2d at p. 744.) The facts of the instant case more closely resemble *Estrada*: although passed after defendant committed grand theft, the amended statute had been in effect for six months before she was charged. Of course, the legal issue is the same: did the Legislature intend the old or new statute to apply when the amendment reducing punishment became effective before the judgment of conviction was final.

[7]As we noted in *Pedro T.,* "the development of modern theories of penology has continued to unfold," and, in California, the Legislature has expressly declared the purpose of imprisonment for crime to be punishment. (*Pedro T., supra,* 8 Cal.4th at p. 1045, fn. 1, citing § 1170, subd. (a)(1).) At oral argument the Attorney General invited us to reconsider *Estrada* in light of the change in the philosophy of the purpose of imprisonment reflected in section 1170, subdivision (a)(1). In the 31 years since this court decided *Estrada,* and its companion case, *Kirk, supra,* 63 Cal.2d 761, the Legislature has taken no action, as it easily could have done, to abrogate *Estrada.* We therefore decline the invitation.

767-768 [9 Cal.Rptr.2d 255] [gas-pressured pellet gun not considered firearm for § 12001 purposes].)[8] Of particular relevance, courts have held that amendments, such as the one at issue here, that mitigate punishment by increasing the dollar amount for certain crimes or enhancements, should be applied retroactively, in the absence of a saving clause or other indicia of a contrary legislative intent. (*Kirk, supra,* 63 Cal.2d at p. 763 [§ 476a, subd. (b), "not sufficient funds" checks]; *People* v. *Enriquez* (1967) 65 Cal.2d 746, 749 [56 Cal.Rptr. 334, 423 P.2d 262] [same]; *People* v. *Roberts* (1994) 24 Cal.App.4th 1462, 1466 [29 Cal.Rptr.2d 771] [§ 12022.6].)

In *Kirk, supra,* 63 Cal.2d 761, the Legislature increased the level of loss necessary to elevate the petitioner's offense to a felony, raising it from $50 to $100. Although *Kirk* does not discuss the purpose of the legislation there at issue, the reasonable inference is the Legislature acted in response to the effects of inflation. Decided by the court on the same day we set out the principles of retroactivity in *Estrada,* in *Kirk* we stated: "The problem is thus precisely the same as the one involved in the *Estrada* case, *supra,* The statute imposing the penalty for issuing the checks was amended prior to final judgment by ameliorating the punishment. Under the rule announced in that case the petitioner is entitled to the benefits of the amendatory statute." (*Kirk, supra,* 63 Cal.2d at p. 763.) No further analysis was necessary in *Kirk* because we viewed the issue as identical to what we resolved in *Estrada.*

 The rule in *Estrada,* of course, is not implicated where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent.[9] In *Pedro T.,* we determined the absence of an express saving clause, emphasized in *Estrada* ("If there is no saving clause he can and should be punished under the new law." [*Estrada, supra,* 63 Cal.2d at p. 747, citing *Sekt* v. *Justice's Court* (1945) 26 Cal.2d 297, 305 (159 P.2d 17, 167 A.L.R. 833)]), does not end "our quest for legislative intent." "Rather, what is required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*Pedro T., supra,* 8 Cal.4th at p. 1049, italics omitted.) Thus, in *Pedro T.,* where the amendment temporarily increasing the penalty for vehicle theft contained no saving clause, we nonetheless found *Estrada* inapplicable: "We have found no facts to suggest that, as of the time of the . . . offense, the original legislative aim [of deterring vehicle theft through harsher punishment] had somehow ceased to operate,

---

[8]See *Pedro T., supra,* 8 Cal.4th at pages 1054-1055, footnote 3 (dis. opn. of Arabian, J.) for a comprehensive list of cases that have applied *Estrada.*

[9]See *Pedro T., supra,* 8 Cal.4th at page 1055, footnote 4 (dis. opn. of Arabian, J.) for a comprehensive list of cases where the statutory change was deemed prospective only.

and it is impossible to discern at what point, if any, during the period of legislative inactivity the Legislature might have determined to let its experiment in enhanced penalties terminate as to all criminal proceedings not yet final . . . . Much truer to the original legislative purpose, we believe, is a determination the provision for enhanced penalties shall apply to all vehicle thefts committed during its stated effective period." (*Pedro T.*, *supra*, 8 Cal.4th at p. 1048.)

### III

Because the statute here at issue, section 12022.6, contains no express saving clause, consistent with the principles of *Estrada* and *Pedro T.*, we must look for any other indications of legislative intent. Specifically, we must try to discern whether the Legislature's decision to "reduce[] [the] breadth of existing tiers" by increasing "the values for those tiers to $50,000 and $150,000, respectively," was intended to apply to all cases not yet final at the time the amendment was enacted or only to offenses committed after its enactment. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 939 (1991-1992 Reg. Sess.) p. 3.)

The legislative history indicates the amendment of subdivisions (a) and (b) of section 12022.6, increasing the threshold loss requirements, was intended to account for the effects of inflation since 1977 when the tiers were first set (Stats. 1976, ch. 1139, § 305.5, p. 5162, operative July 1, 1977, as amended by Stats. 1977, ch. 165, § 93, p. 679, eff. June 29, 1977, operative July 1, 1977): "The enhancement specified in existing law (one year for taking over $25,000 and two years for taking over $100,000) became operative in 1977. According to the Commission on State Finance, the California Consumer Price Index has approximately doubled since that time. In order to account for inflation since 1977, this bill increases the values for those tiers to $50,000 and $150,000, respectively." (See Sen. Com. on Judiciary, Rep. on Assem. Bill No. 939 (1991-1992 Reg. Sess.) p. 3.)

The new three- and four-year enhancements, added in subdivisions (c) and (d) of section 12022.6, were enacted, by contrast, to deter white collar crimes by punishing more severely theft of property worth more than $1 million and $2.5 million: "The purpose of this bill is to deter white collar criminals by imposing additional terms based upon the property loss suffered." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 939 (1991-1992 Reg. Sess.) p. 2.) Specifically, "[T]his bill is intended . . . to provide more severe punishment to those in positions of trust, such as a bank or savings and loan executives, who steal large amounts of money." (*Ibid.*) The Legislature also stated its express intent that all provisions of section 12022.6 "be

reviewed within five years to consider the effects of inflation on the additional terms imposed." (§ 12022.6, subd. (e).) To that end, the amendment includes a sunset clause, repealing the statute as of January 1, 1998, unless a new statute repeals or extends that date. (*Ibid.*)

The Attorney General argues that because the Legislature expressly stated its aim in amending subdivisions (a) and (b) of section 12022.6 was to account for the effects of inflation, we must discern a legislative intent to make the new tiers prospective only. We disagree. The Legislature's statement of intent with regard to the amendments indicates only its consideration of the decline in the dollar's value since 1977, its attempt to adjust downward the penalties for theft of between $50,000 and $150,000 to approximate that decline, and its concern with future legislative consideration of the ongoing effects of inflation, evidenced by the inclusion of a five-year sunset provision in subdivision (e). (See Sen. Com. on Judiciary, Rep. on Assem. Bill No. 939 (1991-1992 Reg. Sess.) pp. 2-3.)

Unlike *Pedro T.*, nothing in the legislative history of section 12022.6 demonstrates an intent to punish persons, such as defendant, whose theft occurred before the statutory amendment, *more* harshly than others whose theft of the same amounts occurred after the amendment, commensurate with what the amounts stolen were worth *prior* to adjustment for the inflation that occurred in the 15 years between 1977 and the amendments in 1992. In fact, punishing defendant to reflect the value of $124,000 in 1977, as opposed to punishing her to reflect that amount's current value, contravenes the Legislature's explicit determination that punishment for the enhancement should be commensurate with the dollar's current worth and that such punishment should be adjusted periodically to reflect fluctuations in the dollar's value. (See § 12022.6, subd. (e).) Thus, the inferred legislative intent in raising the amount necessary for a two-year enhancement from $100,000 to $150,000 is an intent to *mitigate* punishment for offenders, such as defendant, to reflect the dollar's decline in value. As we stated in *Estrada*: "It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Estrada, supra,* 63 Cal.2d at p. 745.)

The dissent asserts the Legislature expressed its intent, and that intent was to address the effects of inflation. If by "intent" the dissent means purpose or motivation, we agree. The question, however, is not the *motivation* for the legislation. Rather, the question is the Legislature's intent concerning whether the adjustment for inflation should apply prospectively only or whether the adjustment should apply to offenses committed, as here, little

more than one year before the enactment. In this regard, we observe that in amending section 12022.6, the Legislature has taken no action, as it easily could have done, to indicate its intent that, contrary to *Estrada*, the amendments should apply prospectively only. Nor does anything in the legislative history suggest such an intent.

■ That the Legislature, at the same time it reduced punishment for persons such as defendant, also amended section 12022.6 by adding subdivisions (c) and (d) to punish more harshly certain white collar criminals (such as errant savings and loan executives) does not, as the Attorney General argues, contradict the presumption of retroactive application of the ameliorative provisions of the statute.[10] Different amendments to the same statute may reduce penalties for one class of defendants while simultaneously increasing penalties for another class. Such differences in treatment, in the absence of discernible legislative intent to the contrary, do not alter the principle of *Estrada*. Thus, provisions of a statute that have an ameliorative effect must be given retroactive effect, even where other provisions of the same statute clearly do not have such an effect. (See *Tapia* v. *Superior Court, supra,* 53 Cal.3d at pp. 300-301; see also *People* v. *Figueroa, supra,* 20 Cal.App.4th at pp. 69-71.)

Similarly, that the Legislature did not change the one- and two-year terms for enhancement under subdivisions (a) and (b) of section 12022.6 does not indicate, as the Attorney General asserts, an intent "to increase or to keep penalties at a fixed level." Although the one- and two-year penalties remained fixed, these penalties apply only if greater amounts are stolen; thus, in effect the amendment *reduced* punishment for a theft of $124,000 from two years to one year based on that amount's approximate decline in value since 1977. In *Pedro T.*, the Legislature clearly indicated that its intent in enacting the statute in effect when the minor committed the crime was to punish offenders more harshly in order to address the threat to the public posed by an increase in vehicle thefts. (*Pedro T., supra,* 8 Cal.4th at p. 1046.) Here, we discern no comparable legislative intent with regard to persons such as defendant, convicted of stealing between $50,000 and $150,000. Nor does the inclusion of a clause "sunsetting" the entire statute in 1998 to provide for future consideration of the effects of inflation change our retroactivity analysis. The inclusion of a mandatory five-year review bespeaks, rather, an intent by the Legislature to ensure punishment under

---

[10]With regard to defendants whose thefts are punishable under subdivisions (c) and (d) of section 12022.6, the Legislature clearly expressed its intent to punish such persons more harshly than under the old statute: "[T]his bill is intended . . . to provide more severe punishment to those in positions of trust, such as a bank or savings and loan executives, who steal large amounts of money." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 939 (1991-1992 Reg. Sess.) p. 2.)

section 12022.6 will continue to be commensurate with culpability in terms of the "real" value of the dollar. By requiring review in five years, the Legislature clearly intends to prevent imposition of enhancements for theft of amounts unadjusted to reflect the effects of inflation. If this requirement tells us anything regarding retroactive or prospective application of the amendments at issue here, it suggests a legislative intent, consistent with the intent underlying the five-year sunset provision, that the amendments apply retroactively so that the severity of the enhancements is proportionate to the value of the amounts stolen.[11]

The dissent maintains "the ameliorative impact on punishment is apparent only; as a matter of economic reality, the change had no mitigatory effect." (Dis. opn., *post*, at p. 799.) Endeavoring to prove its point, the dissent observes: "[T]he person who stole $50,000 in 1993 was deserving of the same enhancement as the person who stole $25,000 in 1989, not to mitigate punishment, but because the crimes were equivalent in 'real dollar' terms." *Id.*, at p. 801.) But application of the amendments to defendant plainly would ameliorate her punishment: under the new statute, she would be eligible for only a one-year enhancement for the theft of $124,000, rather than a two-year enhancement under the old statute.

The dissent also writes the Legislature's purpose—to account for the effects of inflation—"had no relation to penological concerns or goals. The inevitable inflationary effects of time are nothing more than a matter of economic reality; they are entirely neutral on the question of how to measure criminal culpability and assess a commensurate punishment." (Dis. opn., *post*, at p. 801.) We cannot, however, avoid applying the rule of *Estrada* by the superficial expedient of declaring the amendments have "no relation to penological concerns or goals." The statement simply cannot be true when, as here, eligibility for additional punishment is explicitly made to depend on the value of the stolen goods.

■ In light, therefore, of *Kirk* and *Estrada*, the Legislature's acquiescence in these opinions and, most especially, its failure in amending section 12022.6 to express its intent that the amendments apply prospectively only, we adhere to the well-established principle that "where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (*Estrada, supra*, 63 Cal.2d at p. 748; *Kirk, supra*, 63 Cal.2d at pp. 752-763; cf. *Pedro T., supra*, 8 Cal.4th 1041; see also *People v. Rossi* (1976) 18 Cal.3d 295, 304 [134 Cal.Rptr. 64, 555 P.2d 1313]; *Tapia v. Superior*

---

[11]We do not address whether subsequent amendments of section 12022.6, subdivisions (a) and (b) should be given retroactive or prospective application.

*Court, supra,* 53 Cal.3d at p. 301.) Consequently, we find the 1992 amendments of section 12022.6, subdivisions (a) and (b) apply retroactively to defendant.

IV

 The Attorney General requests, in the event we find the amendments retroactive, that we not automatically reward the defendant with "the windfall" of a sentence reduction. To that end, the Attorney General suggests we remand the case for resentencing. To support this argument, the People cite *People* v. *Figueroa, supra,* 20 Cal.App.4th 65, where, because evidence of certain elements of an amended enhancement punishing drug trafficking near schools was not introduced at trial (such evidence was irrelevant under the unamended statute), the Court of Appeal remanded the matter. (*Id.* at pp. 71-72.) Here, in contrast, there is nothing additional to prove under the amended version of the enhancement that was not already proved at trial. The People have successfully met their burden of proving defendant stole $124,000 worth of checks; she is eligible, therefore, only for a one-year enhancement. A remand under the circumstances would serve no purpose.

The Attorney General also claims that because defendant was sentenced pursuant to a plea bargain, a remand is required.[12] This argument ignores the record: defendant's sentence on the enhancement was *not* part of any plea bargain. Only the substantive offense of grand theft was included in the terms of the plea bargain: in exchange for her plea of guilty, defendant received a low term of 16 months for that crime. The section 12022.6 allegation was the subject of a court trial to determine the amount stolen and, after the taking of evidence, the court determined defendant had stolen $124,000 worth of checks. Again, there is no basis for resentencing and, thus, under these circumstances, no purpose would be served by a remand.

DISPOSITION

The judgment of the Court of Appeal is reversed.

Lucas, C. J., and Baxter, J., concurred.

**KENNARD, J.,** ██ ██ ██ ██ ██ I agree with the plurality opinion that under *In re Estrada* (1965) 63 Cal.2d 740 [48

---

[12]The Attorney General states the court imposed "a concurrent two-year term for the excessive taking enhancement." This is incorrect: by their terms, section 12022.6, subdivisions (a) and (b) require the enhancement to be imposed consecutively to the punishment prescribed for the underlying felony. The record indicates the trial court followed the statute and made the two-year enhancement consecutive.

Cal.Rptr. 172, 408 P.2d 948] and *In re Kirk* (1965) 63 Cal.2d 761 [48 Cal.Rptr. 186, 408 P.2d 962], the 1992 amendment to Penal Code section 12022.6 is ameliorative and should be retroactively applied to anyone (like the defendant in this case) whose conviction was not final when the amendment became operative. I also agree with the analysis that leads the plurality to this conclusion, with the following exception.

The plurality opinion attempts to distinguish this court's recent decision in *In re Pedro T.* (1994) 8 Cal.4th 1041 [36 Cal.Rptr.2d 74, 884 P.2d 1022] from both this case and *In re Estrada, supra,* 63 Cal.2d 740. (Plur. opn., *ante,* at pp. 790-791, 793-794, 796.) That attempt is unpersuasive. As Justice Arabian explained in his dissenting opinion in *Pedro T.,* which I joined, *Pedro T.* purported to apply the principles enunciated in *Estrada,* but reached a result at odds with those principles. (*In re Pedro T., supra,* 8 Cal.4th at pp. 1053-1059 (dis. opn. of Arabian, J.).) Its reasoning is inconsistent both with *Estrada* and with this case.

The members of this court unanimously agree that *In re Estrada, supra,* 63 Cal.2d 740, is still good law, notwithstanding *In re Pedro T, supra,* 8 Cal.4th 1041. (Plur. opn., *ante,* at p. 797; dis. opn., *post,* at this page.) Because the plurality opinion here, unlike the majority in *Pedro T.,* has correctly applied *Estrada*'s principles to the facts of this case, I concur in its result.

Mosk, J., concurred.

**ARABIAN, J.,** Dissenting.—Although I harbor no hostility to the concept of ameliorative legislation and the corresponding rule articulated in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*) (see *In re Pedro T.* (1994) 8 Cal.4th 1041, 1053-1059 [36 Cal.Rptr.2d 74, 884 P.2d 1022] (dis. opn. of Arabian, J.)), I respectfully dissent.

In my view, the present case comes within neither the analysis nor the rationale of *Estrada.* Careful consideration of explicit evidence of legislative intent reveals a twofold reason for declining to accord defendant Nasalga and those similarly situated the benefit of amendments to Penal Code section 12022.6 (section 12022.6): First, the ameliorative impact on punishment is apparent only; as a matter of economic reality, the change had no mitigatory effect. Therefore, it does not invoke the rule of *Estrada.* Second, even assuming otherwise, the Legislature has spoken to its intent by virtue of the express motive and purpose for raising the dollar amounts necessary to trigger the sentencing enhancements, which plainly contradict any expectation or intention they should apply to all defendants whose judgments were not yet final as of the operative date. The court is not free to ignore this clear

expression of legislative will; on the contrary, its sole function is to effectuate it.

In *Estrada, supra,* 63 Cal.2d 740, the court rejected the principle set forth in *People* v. *Harmon* (1960) 54 Cal.2d 9 [4 Cal.Rptr. 161, 351 P.2d 329] "that the punishment in effect when the act was committed should prevail." (*Estrada, supra,* 63 Cal.2d at p. 742.) The *Harmon* court had based this conclusion on the general saving clause contained in Government Code section 9608 as well as the common law and statutory rule presumptively according new legislation prospective effect only. (*People* v. *Harmon, supra,* 54 Cal.2d at pp. 23-25; see Pen. Code, § 3.) Reconsidering this analysis, the court in *Estrada* articulated a more flexible framework by which to resolve whether a particular reduction in punishment applies retroactively. As with all statutory construction, the determination focuses on the touchstone of legislative intent. (*Estrada, supra,* 63 Cal.2d at p. 744.) If that is uncertain— for example, in the absence of a specific saving clause—then the court must consult "other factors." (*Ibid.*)

In *Estrada,* the record was devoid of any direct or even indirect evidence of intent. The court could only postulate " 'that the lesser penalty . . . [was now deemed] sufficient to meet the legitimate ends of the criminal law.' " (*Estrada, supra,* 63 Cal.2d at p. 745.) This inference assumed "paramount importance" (*id.* at p. 744 ) in finding that the mitigated punishment should apply even to those crimes committed prior to its effective date: "to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology. . . . [¶] . . . 'There is no place in the scheme of punishment for its own sake, the product simply of vengeance or retribution. [Citation.]' " (*Id.* at p. 745.) Since the hypothesis of a "desire for vengeance" was the only countervailing consideration implied by the record, the court determined the Legislature must have intended the lesser penalty to operate retroactively notwithstanding principles of statutory construction supporting a contrary result. (*Id.* at pp. 746-748.)[1]

The rationale of *Estrada* applies only when amendatory changes have mitigated punishment, a premise the majority[2] here simply assumes from the fact the enhancement term for this particular defendant would decrease. In

---

[1]As the majority in *In re Pedro T., supra,* 8 Cal.4th at page 1045, footnote 1, noted, however, "Since those words were written . . . , the development of modern theories of penology has continued to unfold. (See Pen. Code, § 1170, subd. (a)(1) ['The Legislature finds and declares that the purpose of imprisonment for crime is punishment.'].)"

[2]Although in her concurring opinion Justice Kennard takes exception to the plurality's discussion of *In re Pedro T., supra,* 8 Cal.4th 1041, she agrees with the analysis by which the plurality find *Estrada, supra,* 63 Cal.2d 740, applicable in these circumstances to afford

actuality, the history of the amendment contains no evidence the Legislature conceived of or intended the higher threshold amounts as ameliorative. Rather, the sole purpose was to acknowledge the impact of inflation on the value of the dollar during the 15 years since the enactment of section 12022.6 and to maintain economic parity with the levels originally deemed sufficient to warrant sentence enhancement. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 939 (1991-1992 Reg. Sess.) as amended June 22, 1992; Sen. Com. on Judiciary, Hg. Mins. June 12, 1992.) The fact the amendment included a five-year review provision to adjust for future inflation confirms this narrow objective. (§ 12022.6, subd. (e).)

Manifestly, such purpose had no relation to penological concerns or goals. The inevitable inflationary effects of time are nothing more than a matter of economic reality; they are entirely neutral on the question of how to measure criminal culpability and assess a commensurate punishment. Indeed, comparing the pre- and postamendment statutory schemes, it is clear the Legislature did not effect an overall reduction in punishment. (Cf. *In re Griffin* (1965) 63 Cal.2d 757 [48 Cal.Rptr. 183, 408 P.2d 959] [*Estrada* inapplicable because net effect of amendment did not decrease punishment].) Moreover, apart from compensating for inflation, there is no rationale explaining why some now receive a lesser sentence and others do not. To wit, in absolute dollar terms, the penalty has decreased only for defendants who steal $25,000-$50,000 or $100,000-$150,000 but remains the same for thefts of $50,000-$100,000 or more than $150,000. Adjusting for an inflationary rate of 100 percent, there is no change in penalty for $50,000-$150,000 or more than $200,000, but an *increase* for takings of $150,000-$200,000. For example, theft of $80,000 prior to the amendment warranted a one-year enhancement, whereas theft of $160,000 (i.e., $80,000 adjusted for inflation) will now subject the defendant to an additional two years in prison.

On this record, no forgiveness of penalty appears. To the contrary, we may reasonably deduce the Legislature was of the view that due to inflation the increased amounts now reflect the same level of criminality as the lesser amounts had originally in terms of impact on the victim and threat to society. In other words, the person who stole $50,000 in 1993 was deserving of the same enhancement as the person who stole $25,000 in 1989 not to mitigate punishment but because the crimes were equivalent in "real dollar" terms. Unlike the case in *Estrada*, we are not dealing with an inference " 'that the lesser penalty . . . is [now deemed] sufficient to meet the legitimate ends of

defendant the benefit of the reduced penalty. Thus, notwithstanding separate opinions, a majority of the court have reached the same result based upon the same rationale. Since I disagree with both the plurality and the concurrence, for convenience I will refer to their collective position as "the majority."

the criminal law.' " (*Estrada, supra,* 63 Cal.2d at p. 745.) From an economic perspective—the only one relevant to theft crimes—persons such as defendant are not being punished more harshly: it is the same penalty for the same crime. (See plur. opn., *ante,* at p. 795.) Absent an intent to ameliorate, "*Estrada* is not implicated on these facts." (*In re Pedro T., supra,* 8 Cal.4th at p. 1046.)[3]

The majority explain the import of this limited, inflation-driven motivation as follows: "The Legislature's statement of intent with regard to the amendments indicates *only* its consideration of the decline in the dollar's value since 1977, its attempt to adjust downward the penalties . . . to approximate that decline, and its concern with future legislative considerations of the ongoing effects of inflation . . . ." (Plur. opn., *ante,* at p. 795, italics added.) As it relates to the inquiry now before us, this observation begs the question: simply to describe legislative action in terms of a statement of intent, without assessing it in the larger context, does not assist the effort to discern its significance on the issue of retroactivity. Alternately, it proves too much: the Legislature clearly and unequivocally expressed its purpose in amending section 12022.6, which by its own terms was unrelated to mitigation of punishment. The majority's analysis essentially ignores this fact even though the reasoning in *Estrada* remains grounded in the fundamental principle of deference to legislative intent. (*Estrada, supra,* 63 Cal.2d at p. 744.)

Equally unpersuasive is the reliance on *In re Kirk* (1965) 63 Cal.2d 761 [48 Cal.Rptr. 186, 408 P.2d 962], which involved an increase from $50 to $100 in the amount necessary to elevate issuing an insufficient funds check (Pen. Code, § 476a) from a misdemeanor to a felony. The case followed directly on *Estrada,* and the court gave the defendant, who had issued a check for $75, the benefit of the amendment. Although the opinion in *Kirk* contains no discussion of or reference to the legislative history or intent of the relevant amendment, the majority nevertheless take it as precedent for a similar result here because "the reasonable inference is the Legislature acted in response to the effects of inflation." (Plur. opn., *ante,* at p. 793.)

Given the lack of analysis in *Kirk,* this proffered explanation is conjecture at best; quite probably it is entirely incorrect. The Legislature originally set the felony threshold amount at $50 in 1955 (Stats. 1955, ch. 1862, § 1, p. 3457) and increased it to $100 in 1963 (Stats. 1963, ch. 1448, § 1, p. 3003).

---

[3]At least two additional considerations militate against an intent to mitigate punishment: The amended version of section 12022.6 retains the provision allowing aggregation of losses for imposition of additional penalties. The Legislature also added three- and four-year enhancements for large-scale thefts. (§ 12022.6, subds. (c) & (d).)

During that intervening eight-year period, the California consumer price index rose approximately 18 percent, not 100 percent as the majority speculate. (See Cal. Statistical Abstracts (1995) table D-12, p. 60.)[4] Thus, in the absence of any specifics, the more likely explanation for the change in amounts was a legislative determination the original felony classification calculated at $50 had been too low, i.e., the punishment was too severe for the crime. In such a circumstance, the rule of *Estrada* would apply to the extent this court determined its rationale should embrace a range of ameliorative legislation not just reductions in punishment. Contrary to the implication of the majority, *Kirk* stands for no more than this now unremarkable proposition. (See *In re Pedro T., supra*, 8 Cal.4th 1041, 1054, fn. 3, (dis. opn. of Arabian, J.).) Moreover, whatever the result in *Kirk*, *Estrada* clearly counsels that each case must be evaluated on its own merits with evidence of legislative intent the controlling and determinative factor. Only in the absence of some indication otherwise may the court default to a presumption of retroactivity.

On the foregoing basis I conclude the majority erroneously invoke the rule of *Estrada* both because the amendment in question is not ameliorative and because the legislative purpose negates retroactive application. I would affirm the judgment of the Court of Appeal.

George, J., concurred.

---

[4]According to the 1995 California Statistical Abstracts, the consumer price index was 25.7 in 1955 and 30.4 in 1963.