Filed 11/20/13  P. v. Gagliardi CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br>SALVADOR GAGLIARDI et al.,<br><br>  Defendants and Appellants. | B240328<br><br>(Los Angeles County<br>Super. Ct. No. VA118951) |

APPEALS from judgments of the Superior Court of Los Angeles County. Clifford L. Klein, Judge.  Affirmed, and affirmed as modified.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant Salvador Gagliardi.

Doreen B. Boxer, under appointment by the Court of Appeal, for Defendant and Appellant Hector Gagliardi.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants and appellants Salvador Gagliardi (Salvador) and Hector Gagliardi (Hector)[1] appeal from their felony convictions resulting from the theft of a tractor-trailer rig and its cargo. Hector contends that the trial court erroneously overruled his *Wheeler-Batson* objection[2] and Salvador joins in his arguments. Salvador contends that the trial court erred by imposing multiple punishments in violation of Penal Code section 654.[3] We agree that the trial court erred under section 654, and thus modify Salvador's sentence; but we find no *Wheeler-Batson* error. We thus affirm Hector's judgment in all respects and affirm Salvador's judgment as modified.

## BACKGROUND

### Procedural history

An amended information charged Salvador with the unlawful taking of a vehicle in violation of Vehicle Code section 10851, subdivision (a), with a special allegation under section Penal Code section 22022.6, subdivision (a)(1), that the value of the property exceeded $65,000 (count 1). In count 2, Salvador and Hector were jointly charged with the unlawful taking of another vehicle in violation of Vehicle Code section 10851, subdivision (a). Count 3 charged both defendants with grand theft in violation of section 487, subdivision (a). The information further alleged: the value of the property taken as alleged in counts 2 and 3 exceeded $200,000, within the meaning of section 22022.6, subdivision (a)(2); and pursuant to section 186.11, subdivision (a), the crimes alleged in counts 1, 2, and 3 involved a pattern of related felony conduct. Count 4 charged Hector with receiving stolen property in violation of section 496, subdivision (a). It was further alleged for purposes of sections 666.5 that Hector had previously been convicted of vehicle theft.

---

[1]     To avoid confusion, we refer to Salvador and Hector Gagliardi collectively as defendants and individually by their first names.

[2]     See *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

[3]     All further statutory references are to the Penal Code, unless otherwise indicated.

Defendants were jointly tried. The trial court granted a motion brought under Evidence Code section 1118.1 to dismiss the special value allegation as to count 1, as well as the pattern of related felonies alleged as to counts 1, 2, and 3. Hector admitted the previous vehicle theft conviction, and the jury found him guilty of count 2 as charged, but not guilty of counts 3 and 4. The jury found Salvador guilty of counts 1, 2, and 3 as charged; and as to count 3, the jury found true the allegation that the value of the property exceeded $200,000.

On March 13, 2012, the trial court sentenced Hector to the middle term of three years as to count 2, to be served in county jail, ordered him to pay mandatory fines and fees, and awarded a total of 688 days of presentence custody credit. The trial court sentenced Salvador to the middle term of two years as to count 1, a consecutive one-third middle term of eight months as to count 2, a concurrent eight-month term as to count 3, plus a consecutive two-year enhancement under section 12022.6, subdivision (a)(2), for a total term of four years eight months, to be served in county jail. The court also imposed mandatory fines and fees, and awarded 690 days of presentence custody credit.

Defendants filed timely notices of appeal.

**Prosecution evidence**

In 2010, Salvador and Hector were paid informants for a Los Angeles County Sheriff's Department unit that investigated the theft of commercial cargo from trailers and shipping containers. Whenever Hector was asked by would-be thieves to drive a load of cargo, defendants would contact their "handler," Detective Gerardo Pachuca, or his partner, Detective Greg Nelson. In August 2010, Detectives Pachuca and Nelson met with Salvador and Hector, informed them that Detective Pachuca would be on vacation, advised them not act on any information during that time, and told them that "if they got caught doing their own thing, [they would] be on their own." Detective Pachuca told the brothers to call Detective Nelson if a cargo theft ring contacted them.

Despite this advice Salvador assisted two criminal acquaintances in the theft of a tractor-trailer rig owned by Southern Cal Transport on August 17, 2010. The trailer contained a load of women's clothing with a value of over $250,000, owned by Jones

3

Apparel, Inc., and shipped by FMI International under a contract with Southern Cal Transport. Salvador drove the rig to Montebello where his own tractor was parked, followed by his accomplices, transferred the trailer to his own tractor, drove the stolen tractor to another location, where he left it. Salvador then took the stolen trailer to Pacific Park Drive in Whittier, parked it there, and called his brother to come for him. When Hector arrived, Salvador said the trailer was stolen and contained clothing. The next morning, when Detective Nelson met with Hector to pay him for him for his assistance in a previous case, Hector said nothing about the theft of the day before.

The same morning California Highway Patrol Officer Emmanuel DaSilva found the stolen tractor and set up a surveillance. Within an hour, Hector arrived in his Toyota Highlander automobile, dropped off Salvador next to the tractor, and drove away. Salvador then drove the tractor-trailer rig away. Officers followed Salvador to a commercial area in downtown Los Angeles, where he parked near Hector's Highlander. As soon as Salvador got out of the tractor and entered the Highlander, the officers arrested both men and secured the trailer, which was still loaded with the boxes of women's apparel.

Defendants presented no testimony.

## DISCUSSION

### I. *Wheeler/Batson objection*

Hector contends that the trial court erred by finding no prima facie case of discrimination after the prosecutor exercised three of her first five peremptory challenges to excuse Hispanic jurors.[4] Salvador joins in Hector's contention and adopts Hector's arguments. The use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias violates both the state and federal Constitutions. (*Batson supra*, 476 U.S. at p. 89; *Wheeler*, *supra*, 22 Cal.3d at pp. 276-277.)

---

[4] The five excused jurors were Nos. 3, 14, 17, 21, and 28. Prospective juror No. 17 was an African-American woman, and No. 28 was a white woman; Nos. 3, 14, and 21 were Hispanic.

4

Ordinarily, the trial court engages in a three-step inquiry when considering a defendant's *Wheeler*/*Batson* objection: first, defendant must make a prima facie showing of prohibited group bias; second, if a prima facie showing is made, the burden shifts to the prosecutor to articulate a nondiscriminatory reason for the challenge; and third, the trial court determines whether defendant has proven purposeful discrimination. (*Johnson v. California* (2005) 545 U.S. 162, 170-171 (*Johnson*); *Batson*, *supra*, 476 U.S. at p. 94.)

Because it is presumed that the prosecution uses its peremptory challenges in a constitutional manner, the first stage imposes a burden on defendant to rebut that presumption with a prima facie showing that jurors were challenged solely on the basis of their presumed group bias. (*Wheeler*, *supra*, 22 Cal.3d at pp. 278-281.) To establish a prima facie case of discrimination defendant must produce sufficient evidence to show that "'the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citations.]" (*Johnson, supra*, 545 U.S. at pp. 168, 170 [disapproving "more likely than not" standard]; see also *People v. Thomas* (2012) 53 Cal.4th 771, 793-794.) "We will uphold a trial court finding that the defendant has not established a prima facie case if it is supported by substantial evidence. [Citations.]" (*People v. Smith* (2005) 35 Cal.4th 334, 346-347, fn. omitted.)

Hector contends that a prima facie showing of discrimination must be presumed in this case, and that we must proceed directly to an independent review of the third *Batson* stage of inquiry, whether the prosecutor's stated reasons for the challenges were race-neutral. Hector bases his contention on the fact that the trial court heard defendants' evidence and argument, as well as the prosecution's voluntary explanation for the challenges, and then, without indicating what standard was used to make that determination, the court ruled that it did not find a prima facie case. While we agree that when it is unclear what standard the trial court used, "we independently determine whether the record permits an inference that the prosecutor excused jurors on prohibited discriminatory grounds" (*People v. Carasi* (2008) 44 Cal.4th 1263, 1293), we do not agree that we must presume that defendants established a prima facie case of discrimination.

5

In essence, Hector contends that this is a "first stage/third stage *Batson* hybrid" in which "the question of whether defendant established a prima facie case is moot.' [Citation.]" (*People v. Mills* (2010) 48 Cal.4th 158, 174.) That circumstance arises however, only where "'the trial court requested the prosecutor's reasons for the peremptory challenges and ruled on the ultimate question of intentional discrimination.'" (*Ibid.*) Here by contrast, the prosecutor merely volunteered explanations and the trial court did not rule on the ultimate question of intentional discrimination. Indeed, Hector confirms that after finding no prima facie showing, the trial court "did not determine the persuasiveness of the prosecution's justification." Thus, the issue of defendants' first-stage showing did not become moot or irrelevant to this appeal. (See *People v. Taylor* (2010) 48 Cal.4th 574, 616; *People v. Mills, supra*, at p. 174.) A trial court may hear the prosecutor's reasons before deciding whether there has been a prima facie showing of discrimination, without converting the inquiry into a "third-stage case"; moreover, it is good practice. (*People v. Howard* (2008) 42 Cal.4th 1000, 1019-1020; see also *Johnson, supra*, 545 U.S. at p. 170 ["all relevant circumstances" include "the prosecutor's explanation"].) We thus turn to defendants' first-stage showing.

We review the entire record of voir dire for evidence to support the trial court's ruling that no prima facie showing was made. (*People v. Howard* (1992) 1 Cal.4th 1132, 1155.) To demonstrate a prima facie case of discrimination, the defendant must make as complete a record as possible of all relevant circumstances. (*Wheeler, supra*, 22 Cal.3d at p. 280.) The showing may consist of any relevant evidence, and often includes a showing that the prosecutor "'has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of . . . peremptories against the group [or] that the jurors in question share only this one characteristic -- their membership in the group -- and that in all other respects they are as heterogeneous as the community as a whole. . . . [T]he showing may be supplemented when appropriate by such circumstances as the failure of [opposing counsel] to engage these same jurors in more than desultory voir dire, or indeed to ask them any questions at all. . . .' [Citation.]"

6

(*People v. Harris* (2013) 57 Cal.4th 804, 834-835 (*Harris*), quoting *Wheeler, supra*, 22 Cal.3d at pp. 280-281.)

Hector contends that the following circumstances raised an inference of discrimination and thus satisfied his burden to make a prima facie showing: defense counsel represented that defendants were both Hispanic; Juror No. 3 was Hispanic and "said nothing that could be construed negatively as to the matter"; two other peremptory challenges were used to exclude Hispanic jurors and another was used to exclude an African-American woman.

Hector fails to explain how saying "nothing that could be construed negatively as to the matter" would contribute to a prima facie showing of discrimination, and he cites no authority on the point.[5] In essence, Hector relies on the mere fact that three Hispanic prospective jurors were among the prosecutor's first five peremptory challenges. "Such a bare claim falls far short of 'rais[ing] a reasonable inference that the opposing party has challenged the jurors because of their race or other group association.' [Citation.]" (*People v. Panah* (2005) 35 Cal.4th 395, 442.) A numerical showing alone is inadequate unless the number is large enough to suggest a pattern of impermissible exclusion. (*Harris, supra*, 57 Cal.4th at p. 835.) In this case, the trial court noted that Hispanic prospective jurors made up the majority of the venire, which numbered at least 54. The excusal of Juror Nos. 3, 14, 17, 21, and 28, came early in jury selection, and Hector has cited no evidence of the final make-up of the jury, leaving no means to determine whether challenging three Hispanic jurors suggested a pattern.

Such a small numerical showing is particularly inadequate in cases where the prosecutor has given race-neutral reasons for the excusals, as the prosecutor did here. (*Harris, supra*, 57 Cal.4th at p. 835.) She stated that although she liked Juror No. 3 because he intended to join the military, she rejected him because he was unemployed and she was wary of people who lived in high crime neighborhoods while denying

---

[5] We glean from Hector's reply brief that a response that could be "construed negatively as to the matter" would be something "offensive or suggestive of bias, irresponsibility or the like."

acquaintance with anyone who had ever been a crime victim or arrested for a crime.[6] She rejected Juror No. 14 because that would-be juror had a cousin serving 25 years in prison for vehicular homicide and was hesitant about whether she could convict. The prosecutor rejected Juror No. 21 because of a schizophrenic father who had been arrested in the past for throwing something at a police officer.

Hector complains that the trial court did not make a sincere or reasoned effort to evaluate the prosecutor's explanations to determine whether they were pretextual. However, such an evaluation is a third-stage *Wheeler*/*Batson* analysis, not required at the first stage. (*People v. Taylor, supra*, 48 Cal.4th at p. 616; see *People v. Panah, supra*, 35 Cal.4th at p. 442.) The issue here is whether a review of the record shows that defendant raised a reasonable inference of discriminatory motive. (*Harris, supra*, 57 Cal.4th at p. 834; *Batson, supra*, 476 U.S. at p. 96.)

The prosecutor's explanations are supported in part by the record of oral voir dire: Juror No. 3 stated he was unemployed, had never been the victim of a crime, and had no friend or relatives in law enforcement; Juror No. 14 who was also unemployed, stated that her cousin was serving a long term in prison, her sister had twice been the victim of domestic violence that resulted in trials, and she had no "reaction" to those trials; and Juror No. 21 stated she had a relative who became paranoid when he did not take his medication, and that his most serious offense had been throwing something at an officer while in custody. Further, it is apparent from the record that the oral statements of the prospective jurors came in response to questions about their written answers to juror questionnaires. As defense counsel did not argue to the trial court that the prosecutor was misrepresenting any information provided in the questionnaires, we assume that they support her explanations. (See *People v. Heard* (2003) 31 Cal.4th 946, 970.)

---

[6] Abbreviating and misconstruing the prosecutor's explanation, Hector argues that Juror No. 3 was rejected simply because he was unemployed and lived in a high crime area.

We conclude from our independent review of the record that defendants failed to raise a reasonable inference of a discriminatory motive behind the prosecutor's peremptory challenges, and thus find no error in the trial court's ruling.

## II. Sentencing under section 654

Salvador contends that his sentence violated section 654, which provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

Salvador was convicted of three crimes, all arising from his theft of a tractor-trailer rig and its cargo in August 2010. Count 1 charged Salvador with the theft of the tractor, and count 2 charged him with the theft of the trailer, both owned by Southern Cal Transport. Count 3 charged Salvador with the theft of the cargo, owned by Jones Apparel, Inc. Section 654 prohibits punishment for two or more crimes arising from a single, indivisible course of conduct. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) Thus, section 654 prohibits multiple punishment for taking several items in the course of a single act of theft, even where some of the items belong to different owners. (*People v. Bauer* (1969) 1 Cal.3d 368, 377-378.)

The trial court imposed sentences as to each count, chose count 1 as the principal term, imposed a consecutive term as to count 2, and a concurrent term as to count 3, plus a consecutive two-year excessive loss enhancement. A concurrent term does not avoid double punishment. (*People v. Duff* (2010) 50 Cal.4th 787, 796.) The trial court should have imposed a full term on each count and then stayed execution of all but one. (See *People v. Jones* (2012) 54 Cal.4th 350, 353.)

The unstayed term must be for the offense subject to the longest potential term of imprisonment. (§ 654, subd. (a); *People v. Sanders* (2012) 55 Cal.4th 731, 744.) Both parties agree that count 3 should have been the principal term, as it provides the longest possible term of imprisonment with its two-year enhancement under section 12022.6, subdivision (a)(2). We agree. The trial court was not authorized to impose the

9

enhancement upon a concurrent term, as it did in this case, and would not be authorized to impose the enhancement on a stayed term.  (See *People v. McFarland* (1989) 47 Cal.3d 798, 802, fn. 6; *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1309-1311.)  As the trial court had dismissed the enhancements alleged in counts 1 and 2, it was required to make count 3 the principal term and to run the enhancement consecutively to that term. (See § 1170.1, subd. (a); *People v. Nasalga* (1996) 12 Cal.4th 784, 798, fn. 12.)

Salvador asks that we order the trial court to modify the judgment, whereas respondent contends that this court should modify the judgment by staying execution of the sentences on counts 1 and 2 and imposing the middle term of two years with the excess loss enhancement, for a total unstayed term of four years.  We agree that four years is the only proper sentence here, as any other combination would result in a sentence longer than the original four years eight months.  As Salvador may not be resentenced to a greater term on resentencing (see *People v. Sanders, supra*, 55 Cal.4th at p. 743), no purpose would be served in ordering a new sentencing hearing in the trial court.  (Cf. *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473 [no change to actual prison time].)  We thus exercise our authority under section 1260 to modify the judgment as respondent suggests.

## DISPOSITION

The judgment against Hector Gagliardi is affirmed.  The judgment against Salvador Gagliardi is modified to a total unstayed sentence of four years calculated as follows:  the middle term of two years is imposed as to count 3, which is the base term, enhanced by a consecutive term of two years pursuant to section 12022.6, subdivision (a)(2); the full middle term of two years is imposed as to each of counts 1 and 2, and execution of each such term is stayed.  In all other respects, the judgment against

Salvador Gagliardi is affirmed. The trial court is directed to forward to the Department of Corrections and Rehabilitation a new abstract of judgment.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11