Filed 10/1/13  P. v. Mallett CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047080 |
| v. | (Super. Ct. No. RIF127195) |
| CLYDE LEE MALLETT, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, John D. Molloy, Judge.  Affirmed in part, reversed in part and remanded for resentencing.

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

I

INTRODUCTION

In defendant Clyde Lee Mallett's original appeal from his conviction for possession of cocaine (Health & Saf. Code, § 11350, subd. (a)), we rejected his contention that his sentence of 28 years to life under the "Three Strikes" law constituted cruel and unusual punishment. However, we conditionally reversed the judgment and remanded the matter to the superior court with directions to conduct another in camera hearing on defendant's *Pitchess*[1] motion and to create a record of the files reviewed. (*People v. Mallett* (Dec. 22, 2011, G045094) [nonpub. opn.].) On remand, the trial court held the in camera hearing and found no discoverable information. The court then reinstated the judgment. Defendant again appeals and asks that we independently review the in camera hearing to determine whether the trial court properly denied his *Pitchess* motion. We conclude the trial court did not abuse its discretion in finding no discoverable material in the officers' personnel files.

Defendant also argues he is entitled to be resentenced under the Three Strikes Reform Act of 2012 (Reform Act), enacted as part of Proposition 36, because his conviction was not final at the time the Reform Act became effective and the offense for which he was convicted is neither a serious nor violent felony. The Reform Act amended the Three Strikes law to generally require a new felony offense (the commitment offense) must be a serious or violent felony before a defendant may be sentenced to an indeterminate term of 25 years to life in state prison under the Three Strikes law. (Pen. Code, §§ 667, subd. (e)(2)(A), (C), 1170.12, subd. (c)(2)(A), (C); all statutory references are to the Penal Code unless otherwise stated.) The Attorney General counters that defendant was serving an indeterminate life term under the Three Strikes law at the time the Reform Act was enacted and must therefore petition the trial court to recall his

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

sentence pursuant to section 1170.126, also enacted as part of the Reform Act.

If defendant is correct, he is entitled to be resentenced and rather than an indeterminate life sentence under the Three Strikes law, he is subject to the court selecting one of three terms provided for possessing cocaine (16 months, two years, or three years), doubled (§§ 667, subd. (e)(1), (2)(C), 1170.12, subd. (c)(1), (2)(C)), plus any applicable enhancements. If the Attorney General is correct and defendant must petition the trial court to recall his sentence, the court has discretion to refuse to resentence defendant if it finds he poses "an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) This issue is presently pending before the Supreme Court in *People v. Lewis* (2013) 216 Cal.App.4th 468, review granted August 14, 2013, S211494 and *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted August 14, 2013, S211275. We conclude defendant is entitled to be resentenced because his judgment was not final at the time the Reform Act was enacted, and remand the matter for resentencing.

## II

## DISCUSSION

### A. *The* Pitchess *Hearing*

"A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535.)" (*People v. Hughes* (2002) 27 Cal.4th 287, 330.) A sealed transcript of the in camera hearing held below was made part of the appellate record. We reviewed the transcript and conclude the trial court did not abuse its discretion in refusing to disclose the contents of the officers' personnel files. (*Ibid.*)

### B. *Must Defendant be Resentenced or is a Petition for Resentencing Required?*

The trial court found defendant was convicted of robbery in 1992, and attempted robbery in 1994. These convictions qualify as prior "strikes" under section

667, subdivision (d)(1) and section 1170.12, subdivision (b)(1). (See §§ 667.5, subd. (c)(9) [robbery as violent felony], 1192.7, subd. (c)(19) [robbery as serious felony], (39) [attempted robbery as serious felony].) At the time defendant possessed cocaine in this matter—as well as the time when the court originally imposed sentence and when the court reinstated the judgment on remand—the Three Strikes Law authorized a sentence of 25 years to life on defendant's conviction. (Former §§ 667, subd. (e)(2), 1170.12, subd. (c)(2).)[2] Prior to his conviction in the present case becoming final—indeed, it has not yet become final (*In re Richardson* (2011) 196 Cal.App.4th 647, 664 [judgment is final for purposes of determining retroactivity when "'the courts can no longer provide a remedy on direct review'"])—the electorate approved Proposition 36 on November 6, 2012.

The Reform Act amended the three strikes statutes (§§ 667, 1170.12) to require that before a defendant may be sentenced to an indeterminate life term in prison under the Three Strikes law, the new felony (the commitment offense) must generally qualify as a serious or violent felony. (§§ 667, subd. (e)(2)(A), (C), 1170.12, subd. (c)(2), (C).)[3] With the enactment of the Reform Act, a defendant with two or more prior

---

[2] The version of section 667 in effect at the time of defendant's offense and sentencing was the Legislature's version of the Three Strike law (Stats. 1994, ch. 12, § 1); section 1170.12 was the codification of an initiative's version (Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994)). "The two [were] 'nearly identical.' [Citation.]" (*People v. Williams* (1998) 17 Cal.4th 148, 152, fn. 1.)

[3] An exception to this general rule exists where the prosecution has pled and proved the current offense is a controlled substance charge and a Health and Safety section 11370.4 or 11379.8 allegation was admitted or proven (§§ 667, subd. (e)(2)(C)(i), 1170.12, subd. (c)(2)(C)(i)); the current offense is a listed felony sex offense or requires mandatory sex registration, with certain exceptions (§§ 667, subd. (e)(2)(C)(ii), 1170.12, subd. (c)(2)(C)(ii)); the defendant used a firearm in the commission of the current offense, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)); or the defendant has suffered a prior conviction for a listed sex offense (§§ 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv)). The Attorney General does not contend any of these exceptions apply in defendant's case.

convictions for serious or violent felonies is generally subject to incarceration in state prison for twice the term otherwise provided by law, unless the new felony is a serious or violent felony, in which case the defendant is subject to at a minimum an indeterminate term of 25 years to life in state prison. (§§ 667, subd. (e)(1), (2)(C), 1170.12, subd. (c)(1), (2)(C).)

In addition to this change, the Reform Act also enacted section 1170.126. This new statute's "resentencing provisions . . . are intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under [the Reform Act] would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) Section 1170.126 permits a defendant "serving an indeterminate term of life imprisonment imposed" under the earlier version of the three strikes law and who would not be eligible for such a sentence under the Reform Act, to "file a petition for a recall of sentence" within two years of the statute's enactment, or at a later date if good cause justifies the delay. (§ 1170.126, subd. (b).) In enacting section 1170.126, the electorate provided a potential remedy for individuals sentenced to indeterminate life terms under the Three Strikes law as far back as 1994, when the Three Strikes law was first enacted. (See Stats. 1994, ch. 12, § 1, eff. March 7, 1994.)

The issue presented is whether defendant, whose judgment was not final at the time the Reform Act was enacted, is entitled to resentencing under principles announced in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), or whether he must petition the trial court to recall his sentence under section 1170.126 in order to obtain relief. If he is entitled to resentencing under *Estrada*, he is not subject to an indeterminate sentence. On the other hand, if he is not entitled to resentencing and must instead petition the trial court to recall his sentence, the trial court has discretion to decide whether to recall his

5

sentence and may decline to do so if the court "determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

### 1. Estrada *and its Progeny*

In *Estrada*, *supra*, 63 Cal.2d 740, the defendant escaped from the California Rehabilitation Center and was convicted of violating section 4530. A conviction under section 4530 required at least a one-year commitment commencing from the time the prisoner would otherwise have been discharged from prison. Additionally, section 3044 prohibited a defendant convicted of escape from being paroled until he serves at least two calendar years upon being returned to prison after being convicted of escape. (*Id*. at p. 743.)

A month before Estrada was sentenced, the Legislature amended both statutes, reducing the penalties imposed on a conviction for escape. (*Estrada*, *supra*, 63 Cal.2d at p. 743.) The Supreme Court stated the issue as follows: "A criminal statute is amended after the prohibited act is committed, but before final judgment, by mitigating the punishment. What statute prevails as to the punishment—the one in effect when the act was committed or the amendatory act?" (*Id*. at p. 742.) The court concluded that "[i]f the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies." (*Id*. at p. 744.)

The *Estrada* court based its conclusion on legislative intent. "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied

6

constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id*. at p. 745.)[4] The court noted that the Legislature could indicate a desire that a defendant be punished under the law in existence at the time the offense was committed, if it enacts savings clause spelling out such an intent. "[I]f the savings clause expressly provided that the old law should continue to operate as to past acts, so far as punishment is concerned that would end the matter." (*Id*. at p. 747.) On the other hand, "[i]f there is no savings clause [the defendant] can and should be punished under the new law. [Citation.]" (*Ibid*.)

Because the inevitable inference of legislative intent was that the Legislature intended the ameliorative statute to apply to all those to whom it may constitutionally apply, section 3's default position—"no part of the Penal Code 'is retroactive, unless expressly so declared'"—was not controlling. (*Estrada*, *supra*, 63 Cal.2d at p. 746, fn. 1.) "[W]here the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed. Neither a saving clause such as section 9608 of the Government Code nor a construction statute such as section 3 of the Penal Code changes that rule. This is the rule followed by a majority of the states, and by the United States Supreme Court. (*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390.)" (*Estrada*, *supra*, 63 Cal.2d at p. 748, fn. omitted.)

In *In re Pedro T.* (1994) 8 Cal.4th 1041, the Legislature amended Vehicle Code section 10851 effective January 1, 1990. The amendment increased the maximum punishment from three to four years for unlawfully taking another's automobile. The amendment also provided the increased punishment would remain for a three-year period

---

[4] We use the same rules in interpreting the legislative intent behind ballot initiatives. (*People v. Park* (2013) 56 Cal.4th 782, 796.)

7

and, unless the Legislature directed otherwise in the interim, the previous maximum punishment would be reinstated on January 1, 1993. (*Id.* at p. 1043.)

In 1991, after the amendment went into effect, the minor violated Vehicle Code section 10851. The juvenile court judge suspended execution of sentence and placed the minor on probation for a second time. When the minor violated probation, the court ordered him committed to the California Youth Authority for six years and six months. A four-year maximum term for violating Vehicle Code 10851 was used in calculating the minor's commitment. The minor contended that once the sunset provision of Vehicle Code section 10851 became effective and the maximum possible punishment of three years was reinstated, he was entitled to the benefit of the ameliorative sentence under *Estrada*. (*In re Pedro T.*, *supra*, 8 Cal.4th at p. 1044.)

The Supreme Court stated the basis of its "decision in *Estrada* was our quest for legislative intent." (*In re Pedro T.*, *supra*, 8 Cal.4th at p. 1045.) The court found *Estrada* did not apply in a case involving a sunset provision. "Ordinarily when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest. In the case of a 'sunset' provision attached to a temporary enhancement of penalty, the same inference cannot so readily be drawn." (*Ibid.*) In temporarily increasing the maximum punishment for violations of Vehicle Code section 10851, the Legislature specifically stated its finding that public safety required increasing the punishment, albeit for a defined period of time. (*In re Pedro T.*, *supra*, 8 Cal.4th at p. 1046.) Moreover, knowing the increased punishment would remain in effect for three years until the sunset provision came to fruition, the Legislature could reasonably have concluded the existence of the increased possible punishment was necessary as a deterrent to individuals who might consider taking another's motor vehicle. (*Ibid.*)

Keeping in mind that in determining whether a statute should be applied retroactively or prospectively a court searches for the answer in the legislative intent at the time of the enactment, the court stated that the lack of an express savings clause does not end the inquiry and that "what *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*In re Pedro T.*, *supra*, 8 Cal.4th at p. 1049.) The court then observed the intent at the time the Legislature amended Vehicle Code section 10851 (and provided a three-year sunset clause) was to *increase* the penalty *for a three-year period.* (*In re Pedro T.*, *supra*, 8 Cal.4th at p. 1048.) Thus, the situation presented in *Pedro T.* was materially different from *Estrada*, where the legislative enactment mandated a *reduced* penalty. Consequently, the minor in *Pedro T.* was not entitled to the reduced penalty that went into effect before his judgment was final, but after his criminal conduct had occurred. "The purpose of the temporary increase in penalties under the former law was to punish more severely, and thereby deter, vehicle thefts. Application of the temporarily increased penalties to those who, like Pedro T., were convicted of vehicle theft during the effective period of the enhanced penalties, even though their convictions were not final until after the sunset date, advances the purpose the Legislature sought to achieve." (*Id*. at p. 1052.) Consequently, the court found "*Estrada* is not implicated on these facts." (*Id*. at p. 1046.)

The Supreme Court again addressed the issue of the retroactive application of an ameliorative amendment in *People v. Nasalga* (1996) 12 Cal.4th 784. There, the defendant was convicted of grand theft. The prosecution proved the loss amounted to $124,000. In addition to a 16-month state prison sentence for the theft, the court imposed a two-year enhancement based on the large amount of the loss. At the time of her offense, section 12022.6 provided a two-year enhancement where the loss was in excess of $100,000. Prior to her sentencing, however, the Legislature amended section 12022.6, increasing from $100,000 to $150,000 the amount of loss necessary to trigger the two-year enhancement. The defendant claimed the trial court should not have imposed a two-

9

year enhancement because she was entitled to the ameliorative effect of the amendment under *Estrada*. (*People v. Nasalga*, *supra*, 12 Cal. 4th at pp. 789-790.)[5]

The court stated *Estrada*'s rule "is not implicated where the Legislature *clearly* signals its intent to make the amendment prospective, by inclusion of either an express savings clause or its equivalent." (*People v. Nasalga*, *supra*, 12 Cal.4th at p. 793, italics added and fn. omitted.) However, finding no clear indication of an intent to have the amendment apply only prospectively, a plurality concluded the defendant was entitled to the benefit of the amendment. "In light, therefore, of *Kirk*[6] and *Estrada*, the Legislature's acquiescence in these opinions and, most especially, its failure in amending section 12022.6 to express its intent that the amendments apply prospectively only, we adhere to the well-established principle that 'where the amendatory statute mitigates punishment and there is no savings clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.' [Citations.]" (*People v. Nasalga*, *supra*, 12 Cal.4th at pp. 797-798.)[7]

---

[5] Section 12022.6 also contained a one-year enhancement provision for a lesser loss. Defendant argued that with the change in amount necessary to trigger a two-year enhancement, she should have received a one-year enhancement. (*People v. Nasalga*, *supra*, 12 Cal.4th at p. 789.)

[6] The same day the court decided *Estrada*, it also issued its opinion in *People v. Kirk* (1965) 63 Cal.2d 761, a case "present[ing] the same problem involved in . . . *Estrada*." (*Id*. at p. 762.) There the defendant wrote insufficient funds checks in the amount of $75, in violation of section 476a, and was convicted of the felony. (*People v. Kirk*, *supra*, 63 Cal.2d at p. 762.) Prior to the trial court sentencing the defendant, however, the Legislature amended subdivision (b) of section 476a—the provision conditioning a felony prosecution on the amount of the checks totaling at least $50— increasing to $100 the requisite amount necessary to trigger a felony prosecution. (*People v. Kirk*, *supra*, 63 Cal.2d at pp. 762-763.) Citing *Estrada*, the court found the defendant was entitled to the ameliorative effect of the amendment. (*Id.* at p. 763.)

[7] Although the lead opinion was a plurality opinion, the court unanimously agreed *Estrada* "is still good law." (*People v. Nasalga*, *supra*, 12 Cal.4th at p. 799 (conc. opn. of Kennard, J.).)

10

Recently, in *People v. Brown* (2012) 54 Cal.4th 314, the Supreme Court addressed the issue of whether an amendment to section 4019, increasing the rate at which detained defendants acquire conduct credits prior to sentencing, applies retroactively to defendants sentenced prior to the amendment. The amendment went into effect on January 25, 2010, days after the Court of Appeal upheld the defendant's conviction. Four days after the amendment went into effect, the defendant petitioned for rehearing, raising the issue of the retroactive application of the amendment. The Court of Appeal granted the petition and issued a new opinion finding the defendant was entitled to additional presentence conduct credits. The Supreme Court granted review to determine whether defendants who served time in local custody prior to the operative date of the amendment were entitled to additional credits pursuant to the amendment. (*People v. Brown*, *supra*, 54 Cal.4th at p. 319.)

The court noted the starting point in deciding "[w]hether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent." (*People v. Brown*, *supra*, 54 Cal.4th at p. 319.) If the Legislature has made its intent clear, the court holds in accordance with the expressed, clear intent. If the intent is not clear, the default set by the Legislature in section 3 applies. (*People v. Brown*, *supra*, 54 Cal.4th at p. 319.)

That being said, the court explained the role *Estrada* plays in the deciding issues of "prospective versus retrospective operation." (*People v. Brown*, *supra*, 54 Cal.4th at p. 324.) The court stated, "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [Citation.]" (*People v. Brown*, *supra*, 54 Cal.4th at p. 324.) As section 4019 affects the rate at which prisoners acquire conduct credits and does not mitigate the punishment for any offense, the

11

principle announced in *Estrada* was not applicable.  (*People v. Brown*, *supra*, 54 Cal.4th at pp. 325-326.)

In the final analysis, if a statute is amended to reduce the punishment for a crime and there is no savings clause (or its equivalent) clearly indicating the amendment is to apply only prospectively, a defendant whose conviction for that crime is not yet final at the time of the amendment is entitled to the benefit of the ameliorative amendment. (*Estrada*, *supra*, 63 Cal.2d at p. 745.)  On the other hand, when a statute has an ameliorative effect but does not reduce the punishment for a crime, the statute applies prospectively only in accordance with section 3, unless the amendment contains a clear statement that the amendment is to apply retroactively.  (*People v. Brown*, *supra*, 54 Cal.4th at p. 325.)

### 2.  *Defendant is Entitled to be Resentenced*

Against this backdrop of Supreme Court decisions we turn to the present issue.  As noted above, the issue is presently pending in the Supreme Court.  There is, however, a remaining published case that addressed the question presented herein.  In *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*), our brethren in the Fifth Appellate District concluded defendants who were sentenced prior to the effective date of the Reform Act, but whose sentences were not yet final at that time, must petition the court to recall their sentences.  (*Id*. at p. 172.)

As we observed earlier, section 1170.126, enacted as part of the Reform Act, provides that any person serving an indeterminate life term under the Three Strikes law who would not be eligible for such a sentence under the Reform Act—i.e., the offense upon which the prisoner was sentenced was not a serious or violent felony— "may file a petition for a recall of sentence . . . before the trial court that entered the judgment of conviction in his or her case, to request resentencing in accordance with the provisions of subdivision (e) of Section 667, and subdivision (c) of Section 1170.12, as

12

those statutes have been amended by the act that added this section." (§ 1170.126, subd. (b).) The *Yearwood* court concluded *Estrada* was not applicable because section 1170.126 "operates as the functional equivalent of a savings clause." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 172.) We respectfully disagree.

We begin our analysis with the general rule established in *Estrada*: "[W]here the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed" (*Estrada*, *supra*, 63 Cal.2d at p. 748) on defendants whose judgments are not final as of the date the amendatory provision was enacted (*id.* at p. 744). The reason for this rule is that it "is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Id*. at p. 745.) The court marked the constitutional limit as those cases in which the judgment is not yet final. (*Id*. at pp. 742, 744-745.) A judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari have expired. (*People v. Kemp* (1974) 10 Cal.3d 611, 614.)

As the *Yearwood* court would agree, if the Reform Act did not contain section 1170.126, defendants whose sentences were not yet final on November 7, 2012, would unquestionably be entitled to automatic resentencing under the Reform Act. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 173 ["courts have departed from the *Estrada* standard 'only when new legislation has included an express savings clause or its equivalent or when some other consideration clearly dictated a contrary result'"].) As noted above, that is because we presume the legislative agency, here the electorate, intend the ameliorative amendment to apply to all those to whom it can constitutionally apply. (*Estrada*, *supra*, 63 Cal.2d at p. 745.) The electorate knows how to provide a savings clause (*People v. Warner* (1988) 203 Cal.App.3d 1122, 1126 [article I, section 28,

13

subdivision (d) of the California Constitution and added by Proposition 8 contained a savings clause]), but did not provide one here (*Yearwood*, *supra*, 213 Cal.App.4th at p. 172). Neither did the Reform Act refer to individuals whose judgments were not final at the time the Reform Act was enacted. (*Ibid.*)

We do not view section 1170.126 as the equivalent of a savings clause. Here, rather than simply amend sections 667 and 1170.12 to require that a new crime must be a serious or violent felony to sentence a defendant to an indeterminate life term in state prison under the Three Strikes law—in which case *only* those defendants whose convictions were not yet final at the time of the amendment and individuals prosecuted for crimes occurring after the effective date of the Reform Act would benefit (*Estrada*, *supra*, 63 Cal.2d at p. 745)—the electorate decided to provide a remedy for even more individuals. In fact, the electorate provided a potential remedy to *every* defendant ever sentenced to an indeterminate life sentence under the Three Strikes law for a felony that was not serious or violent.[8] Section 1170.126 provides a remedy to individuals whose judgments have been *final for more than 19 years*; the Three Strikes law was first enacted in March 1994.

In addition to providing a possible remedy to all individuals sentenced to an indeterminate life term under the initial Three Strikes law for an offense that was neither serious nor violent, including those sentenced as far back 1994, section 1170.126 further provides: "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." (§ 1170.126, subd. (k).) The remedy of automatic resentencing under *Estrada* would be "otherwise available" to individuals in defendant's position. We cannot say the electorate's enactment of section 1170.12, a

---

[8] We use the phrase "potential remedy" because the trial court retains discretion to decide whether to recall the sentenced prisoner's sentence. (§ 1170.126, subd. (f).)

statute intended to provide a remedy to those who would not otherwise be entitled to the benefit of the amendment to sections 667 and 1170.12, was intended to deny the benefit of the amendments to individuals who would otherwise receive them.

While we cannot tell the electorate how a savings clause must be structured (*In re Pedro T.*, *supra*, 8 Cal.4th at pp. 1048-1049), we may properly hold—consistent with *Estrada*—that if the Legislature or the electorate enact an ameliorative amendment reducing a criminal penalty and intend the amendment to only apply prospectively, that the intent be clearly expressed in order to overcome the "inevitable inference" that it must have intended the amendment apply retroactively. Section 1170.126 does not *clearly* express such an intent.

We also note that while the Attorney General argues the Reform Act's amendments to sections 667 and 1170.12 cannot be applied retroactively, she concedes the amendments would apply to any individual who committed a felony prior to the enactment of the Reform Act but sentenced after the Reform Act became effective. However, when a defendant is sentenced under a statute for a crime that occurred prior to the statute's enactment, such an application is by its very nature retroactive. To claim the amendment is applied prospectively so long as the sentencing date occurs after the effective date of the enactment is meritless. When a statute increases the punishment for a particular offense and the statute is applied to a crime that occurred prior to enactment, that application violates ex post facto clauses of the federal Constitution and the state Constitution because it is applied retroactively. (*Collins v. Youngblood* (1990) 497 U.S. 37, 43 [legislatures cannot enact "retrospective" laws increasing punishment for offenses that have already occurred]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 288 [same]; see also *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1544-1545 [Proposition 215, the compassionate use act may be "retroactively" applied to cases pending at time initiative became effective].) While the constitutionality of a retroactive penalty provision turns on

15

whether the penalty increases or decreases punishment, the retroactive nature of the application does not.

Lastly, the Attorney General asserts that applying the Reform Act retroactively to one in defendant's situation would deny the prosecution the ability to demonstrate the defendant may have qualified for an indeterminate life sentence under one of the exceptions listed in subdivision (e)(2)(C).[9]  In *People v. Figueroa* (1993) 20 Cal.App.4th 65, the defendant was convicted of selling drugs and received a three-year enhancement because the sale occurred within 1,000 feet of a school.  While his case was pending on appeal, the Legislature amended the enhancement statute (Health & Saf. Code, § 11353.6, subd. (d)), adding a requirement that the criminal act must occur while school is in session or while minors are using the facility.  The defendant contended he was entitled to the benefit of the amendment because his conviction was not final at the time of the enactment.  (*People v. Figueroa*, *supra*, 20 Cal.App.4th at p. 69.)  Relying on *Estrada*, the Court of Appeal agreed.  (*Id.* at p. 71.)  Pertinent to the Attorney General's argument, the court concluded that while the defendant was entitled to the ameliorative effect of the statute, the prosecution was entitled on remand to introduce any evidence it may have that the school was in session or that minors were using the facility at the time of the offense.  (*Id.* at pp. 71-72.)  As the Attorney General does not suggest defendant has prior convictions that would otherwise make him eligible for an indeterminate life sentence, there is no need to consider remanding this matter for the purpose of permitting proof of any such prior convictions.

---

[9]  See fn. 3, *ante*.

16

III

DISPOSITION

The cause is remanded for the trial court to resentence defendant pursuant to section 667, subdivision (e)(1), (2)(C) and section 1170.12, subdivision (c)(1), (2)(C). In all other respects, the judgment is affirmed.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.

17