Filed 4/12/21  P. v. Salmen CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUSTIN SALMEN,<br><br>    Defendant and Appellant. | B301822<br><br>(Los Angeles County<br>Super. Ct. No. BA449759) |

APPEAL from judgment of the Superior Court of Los Angeles County.  Robert J. Perry, Judge.  Modified and affirmed with directions.

Judith Kahn, under appointments by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Roberta L. Davis and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Justin Salmen appeals the judgment entered following a jury trial in which he was convicted of first degree murder. (Pen. Code,[1] § 187, subd. (a); count 1.) The trial court sentenced appellant to a total term of 62 years to life in prison. The sentence consisted of 25 years to life on count 1, doubled to 50 years to life for a prior strike conviction (§§ 667, subd. (d), 1170.12, subd. (b)), plus one year for the personal use of a knife (§ 12022.5, subd. (b)), five years for a prior serious felony conviction (§ 667, subd. (a)(1)), and one year each for six prior prison terms (§ 667.5, subd. (b)).

Appellant contends the trial court abused its discretion in excluding evidence of the victim's alleged prison gang tattoo and substantial evidence does not support the jury's finding of premeditation and deliberation. We disagree and affirm the judgment of conviction. Appellant further asserts and respondent agrees that the one-year prior prison term enhancements imposed under section 667.5, subdivision (b) must be stricken in accordance with Senate Bill No. 136. We also agree and modify the judgment to strike the six one-year enhancements and affirm the judgment as modified. Finally, we reject appellant's assertion that remand is required to allow the trial court to consider striking the five-year prior serious felony conviction enhancement. (§ 667, subd. (a)(1).)

## FACTUAL BACKGROUND

In August 2016, appellant and Kenneth Dowell (both White men) shared an apartment at Sober Clarity, a sober living facility. Dowell served as the "maintenance man" around the facility and got along well with the facility manager and other

---

[1] Undesignated statutory references are to the Penal Code.

Sober Clarity staff members who were Black. Before appellant moved in, Dowell had a Black roommate with whom he was good friends. Dowell and appellant also seemed to "get along just fine," and they occasionally worked together.

According to appellant, however, Dowell was a White supremacist who had killed people for the Aryan Brotherhood while he was in prison. Appellant had a Black girlfriend while he and Dowell were roommates, and Dowell made his disapproval of appellant's interracial relationship very clear through "subliminal messages." Early in August 2016, appellant complained to a facility staff member that Dowell was a racist.

On August 28, 2016, sometime before 8:00 p.m., appellant killed Dowell by stabbing him in the neck 30 to 40 times. According to appellant, a fight had started when appellant walked into the room with a wedding ring and told Dowell he was going to propose to his pregnant girlfriend. Dowell made some insulting racist remarks about the girlfriend, who was of mixed race and called appellant a "nigger[2] lover." When appellant reacted, Dowell punched appellant in the face. Dowell picked up a pair of scissors and appellant thought Dowell was going to kill him. Appellant grabbed the scissors away as the two men began to struggle. Appellant threw Dowell on the bed and started "beating his fucking ass." But Dowell continued to fight back. Appellant grabbed a knife and stabbed Dowell in the eye to stop Dowell from killing him. When Dowell still came after him, appellant began "[c]utting his neck" "[a] lot." Appellant dragged

---

[2] This offensive term is replaced hereafter with "n" so as not to repeat it.

Dowell into the bathroom "so he could bleed out" as he continued to stab Dowell in the neck.

When the fighting ended, Dowell was lying facedown on the bathroom floor, bleeding. Appellant broke the blade off the knife and flushed it down the toilet. He then dragged Dowell into the living room and tried to clean the blood from the bathroom. When he wiped the blood off his own body and realized he had not been injured, he inflicted wounds on himself to make it look like he had been assaulted. Appellant changed his clothes and left to get some gasoline from a gas station to "burn the place down" "so the murder didn't happen."

After appellant left the apartment, he told one of the facility's staff that Dowell had stabbed him in the eye with a screwdriver. Appellant then asked for the gate to be opened so he could go get some gas for Dowell's truck. Appellant returned with the gasoline about 20 minutes later. He piled blankets, a mattress, and other items on top of Dowell, poured the gasoline on the pile, and attempted to set it ablaze.

Surveillance video showed appellant come downstairs from the apartment at 8:24 p.m. with his shirt on fire. He removed his burning shirt, returned to the apartment, and came back downstairs with a skateboard at 8:25 p.m. At 8:31 p.m., appellant climbed over the front gate and fled on his skateboard.

Appellant was arrested and interviewed by police two days later on August 30, 2016. During the interview appellant stated that he had "exterminated" Dowell because he was "tired of [Dowell] being a racist and fussy and bitchy." But appellant insisted that, throughout the confrontation, Dowell was trying to "take [appellant's] life," and Dowell would have killed him if he didn't kill Dowell first.

4

# DISCUSSION

## I. The Trial Court Did Not Abuse Its Discretion in Excluding Evidence of the Victim's Alleged Prison Gang Tattoo

Appellant contends the trial court abused its discretion in excluding evidence of Dowell's Aryan Brotherhood tattoo, which he allegedly got while serving 33 years in prison for murder. Asserting that the tattoo signified lifetime fealty to a violent White supremacist gang, appellant maintains that the evidence was critical to establishing appellant's claim of self-defense, and the trial court's error in excluding it requires reversal. We disagree.

### A. *Relevant background*

Prior to trial, the prosecution sought to exclude "Any Reference to the Victim's 1982 Murder Conviction" as well as "Any Reference to the Victim Belonging to a Prison Gang." The trial court ruled that evidence of the murder conviction was admissible only to the extent appellant himself testified about it. As for the alleged gang tattoo, the court agreed with the prosecutor that any suggestion that Dowell might have been part of a notorious prison gang based on a faded tattoo of unknown origin was tenuous and speculative.

### B. *Applicable law*

A trial court is vested with considerable discretion to determine the relevance of evidence, defined as "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action," including a witness's credibility. (Evid. Code, § 210; *People v. Contreras* (2013) 58 Cal.4th 123, 152.) Under Evidence Code section 352, a trial court has similarly broad discretion to exclude even relevant

evidence if it determines the probative value of the evidence "is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352; *People v. Johnsen* (2021) 10 Cal.5th 1116, 1176.)  Evidence that bears on the credibility of a witness may be relevant, but nevertheless collateral to the case and subject to exclusion by the trial court. (*Contreras*, at p. 152.)  Further, "as long as the excluded evidence would not have produced a ' " 'significantly different impression' " ' of the witness's credibility, the confrontation clause and related constitutional guarantees do not limit the trial court's discretion in this regard."  (*Ibid*.)

We review the trial court's rulings on the relevance and admissibility of evidence under Evidence Code section 352 for abuse of discretion.  (*People v. Jones* (2017) 3 Cal.5th 583, 609.) "We will not reverse a court's ruling on such matters unless it is shown ' "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "  (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

### C. *Analysis*

Appellant contends that "[t]he trial court erred in precluding counsel from adducing evidence, known to appellant, that Dowell belonged to the Aryan Brotherhood when serving 33 years in prison and had a tattoo signifying his membership in a violent White Supremacist prison gang."  But contrary to appellant's claim, the only evidence excluded was evidence of a faded tattoo that may or may not have signified Dowell's

6

allegiance to the Aryan Brotherhood gang at some point in his life, possibly while he was in prison.

At trial, evidence of the tattoo was not introduced, but evidence that Dowell committed murder and belonged to the Aryan Brotherhood gang while he was serving a 33-year sentence for murder was introduced through appellant's testimony. Appellant testified that after he moved in with Dowell, Dowell told him "he was a White supremist [*sic*], he killed people for the Aryan Brotherhood and he told [appellant] he believes the supreme White power." Defense counsel also asked appellant about his knowledge of Dowell's time in prison:

"[Defense counsel]: [Y]ou mentioned [Dowell] killed people for the Aryan Brotherhood?

"[Appellant]: Yes.

"[Defense counsel]: Did he say under what circumstances or where that happened?

"[Appellant]: No. Well he said that . . . he was in prison."

Defense counsel continued to press appellant about Dowell's time in prison, and appellant testified that Dowell was a racist and told appellant he had killed people in prison: "[Dowell] got caught for one of them. He did 30 years for it," and then "[h]e killed more people in prison." Appellant explained that he made the decision to kill Dowell because he knew his "life was in danger [because] this man was [a] killer."

During closing argument, defense counsel emphasized Dowell's time in prison for murder and repeatedly referred to the things Dowell "used to do in prison for the Aryan Brotherhood." In the context of the self-defense instruction, the jury was specifically informed that it could consider information that

7

appellant knew "Dowell had threatened or harmed others in the past" to decide if appellant's conduct and beliefs were reasonable.

" 'A person claiming self-defense is required to "prove his own frame of mind," and in so doing is "entitled to corroborate his testimony that he was in fear for his life by proving the reasonableness of such fear." ' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065; *People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, 745.) Evidence that Dowell had earned a gang tattoo as a member of the Aryan Brotherhood while serving time in prison might have been relevant to corroborate appellant's claimed belief in the immediate need to defend himself with deadly force, but only if a foundation could be laid to establish a link between Dowell's tattoo and the Aryan Brotherhood gang. Laying the requisite foundation would have required the testimony of an Aryan Brotherhood gang expert or someone with personal knowledge of the circumstances of Dowell's acquisition of the gang tattoo, along with evidence that appellant had personal knowledge of Dowell's tattoo being a symbol of allegiance to the Aryan Brotherhood gang.

Even if a foundation could be established, the probative value of the evidence was minimal: The tattoo's sole relevance was to corroborate appellant's claim that Dowell was a member of the Aryan Brotherhood. But in light of appellant's testimony that Dowell actually told him he was a White supremacist and he had killed people for the Aryan Brotherhood while he was in prison, evidence of the tattoo—even if it was an Aryan Brotherhood tattoo—was merely cumulative. On the other hand, the detour necessary to establish the relevance of this evidence would have consumed a significant amount of time and created a substantial danger of confusing the issues and misleading the

jury, thus outweighing the slim probative value of the evidence. The trial court properly excluded the tattoo evidence pursuant to its broad authority to do so under Evidence Code section 352.

In this regard, appellant's reliance on federal cases discussing Aryan Brotherhood gang culture to argue the importance of the tattoo evidence is misplaced. The issue here is not whether the Aryan Brotherhood is a dangerous prison gang. Rather, the admissibility of the evidence of Dowell's tattoo under Evidence Code section 352 turned on whether its probative value was outweighed by the risks of prejudice, undue consumption of time, confusing the issues, or misleading the jury. After properly weighing these factors, the trial court did not abuse its discretion in excluding evidence of the tattoo while still allowing appellant to testify to his knowledge of Dowell's violent history as a member of the Aryan Brotherhood.

As for appellant's claim that the trial court's ruling stripped him of his right to present a defense, we observe that as a general matter, application of " 'the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense.' " (*People v. Turner* (2020) 10 Cal.5th 786, 818; *People v. Linton* (2013) 56 Cal.4th 1146, 1202.) " ' "Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." ' " (*People v. Thornton* (2007) 41 Cal.4th 391, 443, quoting *People v. Boyette* (2002) 29 Cal.4th 381, 427–428.)

As set forth above, the trial court's ruling excluded only the tattoo evidence; appellant presented his defense that he killed Dowell because he believed his life was in immediate danger from this killer who had served a 30-year prison sentence for murder

9

and committed multiple murders in prison as a member of the Aryan Brotherhood. His counsel argued the killing was in self-defense based on Dowell's violent history. And the jury was given a self-defense instruction that allowed it to consider information that appellant knew "Dowell had threatened or harmed others in the past" in deciding if appellant's conduct and beliefs were reasonable. Given that the tattoo evidence would have been merely cumulative, its exclusion did not impair appellant's right to present a defense.

## II. The Jury's Finding of Premeditation and Deliberation Is Supported by Substantial Evidence

Selectively citing the evidence supporting his claim that he killed Dowell on sudden impulse and in self-defense, while ignoring evidence to the contrary, appellant contends there was insufficient evidence of premeditation and deliberation to support a finding of first degree murder. Appellant's claim, however, is belied by the record.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court ' " 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the

10

evidence.' " ' " (*People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*), quoting *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

The same standard applies when the prosecution relies primarily on circumstantial evidence to obtain a conviction (*People v. Lenart* (2004) 32 Cal.4th 1107, 1125 (*Lenart*)), and the reviewing court must accept any logical inferences the jury might have drawn from the circumstantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*Id.* at p. 358.) The reviewing court resolves neither credibility issues nor evidentiary conflicts: " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*Id.* at p. 357.) Indeed, " '[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142, quoting *Zamudio*, at p. 357.)

" 'Murder is the unlawful killing of a human being, or a fetus, with malice aforethought.' (Pen. Code, § 187, subd. (a).) If the murder is 'willful, deliberate, and premeditated,' it is first degree murder. (*Id.*, § 189, subd. (a).) ' " 'In this context, "premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against

11

the proposed course of action." ' " [Citation.] " 'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " [Citations.] "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " (*Morales*, *supra*, 10 Cal.5th at p. 88; see also *Lenart*, *supra*, 32 Cal.4th at p. 1127 ["[The California Supreme Court has] never required that there be an extensive time to premeditate and deliberate"].)

In *People v. Anderson* (1968) 70 Cal.2d 15, 26–27 (*Anderson*), our Supreme Court identified three types of evidence that will support a finding of premeditation and deliberation: "(1) planning activity, or 'facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing'; (2) motive, or 'facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim'; and (3) manner of killing, or 'facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a "preconceived design" to take his victim's life in a particular way for a "reason." ' " (*Morales*, *supra*, 10 Cal.5th at pp. 88–89; *Lenart*, *supra*, 32 Cal.4th at p. 1127.)

The *Anderson* factors provide " 'a framework to aid in appellate review,' but [do] not 'define the elements of first degree murder or alter the substantive law of murder in any way.' " (*Morales*, *supra*, 10 Cal.5th at p. 89; *People v. Booker* (2011) 51

12

Cal.4th 141, 173 ["These three categories are merely a framework for appellate review"]; *People v. Perez* (1992) 2 Cal.4th 1117, 1125.)  The high court has stressed that these " ' "guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight." ' " (*Morales*, at p. 89, quoting *People v. Rivera* (2019) 7 Cal.5th 306, 324.)  Indeed, "[t]hese factors need not be present in any particular combination" (*People v. Stitely* (2005) 35 Cal.4th 514, 543), nor are they "the exclusive means of establishing premeditation and deliberation." (*Lenart*, *supra*, 32 Cal.4th at p. 1127.)  However, "[w]hen the record discloses evidence in all three categories, the verdict generally will be sustained." (*People v. Proctor* (1992) 4 Cal.4th 499, 529.)

The record in this case reveals substantial evidence of premeditation and deliberation based on all three of the *Anderson* factors.

Appellant focuses on the fact that he did not enter the room armed or carrying a concealed weapon to argue that there was no evidence of planning activity.  But there was plenty of time after appellant entered the room and got into an argument with Dowell over appellant's pregnant girlfriend for appellant to formulate a plan to kill Dowell and carry it out.  Appellant's own statements to the police showed that once he had overpowered Dowell by attacking him on the bed, appellant decided to kill Dowell with a knife he grabbed from the kitchen.  He dragged Dowell to the bathroom where he proceeded to stab him multiple times in the neck.  "Planning activity" need not occur over any particular length of time; indeed, "[t]he act of planning— involving deliberation and premeditation—requires nothing more than a 'successive thought[] of the mind.' " (*People v. San Nicolas*

13

(2004) 34 Cal.4th 614, 658 (*San Nicolas*).) Here, appellant's successive decisions to kill Dowell, obtain a knife, and deliberately move him into the bathroom where Dowell "could bleed out" amply demonstrated planning activity, and constituted substantial evidence supporting the jury's finding of premeditation and deliberation.

The number and location of the stab wounds demonstrated that appellant had chosen a manner of killing that would certainly result in death, from which a rational jury could infer that the manner of killing showed deliberation and premeditation. By appellant's own estimate, he stabbed Dowell 30 to 40 times. The sheer amount of time it took appellant to inflict so many wounds gave him ample time to reflect on his actions. (See *People v. Pride* (1992) 3 Cal.4th 195, 247 ["A violent and bloody death sustained as a result of multiple stab wounds can be consistent with a finding of premeditation"]; see also *San Nicolas*, *supra*, 34 Cal.4th at pp. 658–659 ["sheer number" of lethal wounds provided sufficient evidence of deliberation and premeditation].)

After confessing he had "exterminated" Dowell, appellant described his motive for the killing during his interview with police: "I'm tired of him being racist and bitchy and fussy and complaining about me not doing this and me not doing that." Appellant explained that after Dowell had called him an "n lover" and punched him, "I killed him 'cause I'm tired of people being racist."

Appellant confirmed his motive at trial, testifying that Dowell had let him know through "subliminal messages" that he disapproved of appellant's Black girlfriend. Appellant also testified that immediately before the killing, Dowell had called

14

appellant an "n lover" and insulted appellant's girlfriend.  And about two weeks before the killing, when appellant complained to one of the facility's employees that Dowell was a racist, appellant was "very irate . . . very upset."

All of this evidence of planning, the manner of killing, and the motive adds up to overwhelming evidence in support of the jury's finding of premeditation and deliberation.  Appellant's substantial evidence challenge to his first degree murder conviction fails.

## III. Senate Bill No. 136 Requires that Appellant's One-Year Prior Prison Term Enhancements Be Stricken

Appellant's sentence includes six consecutive one-year enhancements pursuant to former section 667.5, subdivision (b) for having served six prior prison terms on felony convictions. However, effective January 1, 2020, Senate Bill No. 136 amended section 667.5, subdivision (b) to apply only if the prior prison term was served "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code."  (Pen. Code, § 667.5, subd. (b); see Sen. Bill No. 136 (2019–2020 Reg. Sess.) § 1.)  None of appellant's prior prison term enhancements was based on a conviction for a sexually violent offense under Welfare and Institutions Code section 6600, subdivision (b).

Absent evidence to the contrary, courts presume "the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date."  (*People v. Brown* (2012) 54 Cal.4th 314, 323.)  Appellant's conviction was not final when Senate Bill No. 136 took effect because his case was (and remains) on appeal, and the

15

time for filing a petition for writ of certiorari in the United States Supreme Court has not yet expired. (*People v. Vieira* (2005) 35 Cal.4th 264, 306; *People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn. 5.) Accordingly, the amendment to section 667.5, subdivision (b) applies retroactively to this case. (*People v. Winn* (2020) 44 Cal.App.5th 859, 872–873 [Senate Bill No. 136 applies to nonfinal judgments on appeal]; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341 [same].)

Remand for a new sentencing hearing is unnecessary in this case, however, because the trial court has already exercised its discretion to impose the maximum possible sentence. (*People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15 ["Because the resentencing court had imposed the maximum possible sentence, regardless of whether the two-year on-bail enhancement was stricken, there is no need to remand the matter to the trial court to exercise its sentencing discretion anew"]; *People v. Winn*, *supra*, 44 Cal.App.5th at pp. 872–873 [same]; *People v. Lopez* , *supra*, 42 Cal.App.5th at p. 342 [same].)

## IV. The Record Contains No Indication the Trial Court Was Unaware of Its Discretion to Strike the Prior Serious Felony Conviction Enhancement; Remand Is Therefore Unwarranted

Appellant contends that there is no clear indication that the court would not have reduced his sentence if it had realized it had discretion to strike the five-year enhancement imposed under section 667, subdivision (a)(1). Accordingly, appellant argues that remand is necessary to give the trial court the opportunity to exercise its discretion to strike the enhancement. We disagree.

16

Senate Bill No. 1393, which amended sections 667 and 1385 to give trial courts the discretion to strike the five-year enhancement under section 667, subdivision (a)(1), became effective on January 1, 2019—nine months before appellant was sentenced in this case.  Appellant did not seek to have the trial court strike the section 667 enhancement, thus forfeiting the claim for appeal.  (*People v. Wall* (2017) 3 Cal.5th 1048, 1075 ["a defendant forfeits on appeal any 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' in the absence of objection below"]; *People v. Scott* (1994) 9 Cal.4th 331, 353.)

Even if appellant's claim were not forfeited, however, remand would be unwarranted because there is no indication that the trial court was unaware of its discretion to strike the section 667 enhancement in this case.  In order to merit remand for resentencing, it is appellant's burden to "affirmatively demonstrate that the trial court misunderstood its sentencing discretion."  (*People v. Davis* (1996) 50 Cal.App.4th 168, 172.) "When 'the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing."  (*People v. Lee* (2017) 16 Cal.App.5th 861, 866–867; *Davis*, at p. 172.)  But absent a contrary showing on the record, the sentencing court is presumed to be aware of its discretionary choices.  (*People v. Frazier* (2020) 55 Cal.App.5th 858, 868 ["It is a fundamental tenet of appellate review that we presume on a silent record the court properly exercised its discretion"]; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

Senate Bill No. 1393 became effective nine months before appellant was sentenced in this case, and there is no indication in the record that the court was unaware of its sentencing discretion. Appellant thus failed to sustain his burden of proving error; remand is unwarranted. (*Lee*, *supra*, 16 Cal.App.5th at p. 867.)

## DISPOSITION

The judgment is modified to strike the six one-year enhancements imposed under Penal Code section 667.5, subdivision (b). The trial court is directed to correct the abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

18