Filed 4/25/22  P. v. Hoffman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093703 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE021695) |
| v. | |
| TYLER SHAWN HOFFMAN, | |
| Defendant and Appellant. | |

Defendant Tyler Shawn Hoffman appeals from a judgment after a jury found him guilty of carrying a concealed, loaded, and unregistered firearm in a vehicle (Pen. Code, § 25400, subds. (a)(1) & (c)(6)—count one)[1] and carrying a loaded and unregistered firearm in public (§ 25850, subds. (a) & (c)(6)—count two), and found true gang enhancements (§ 186.22, subd. (b)(1)) as to both counts.  On appeal, defendant contends the jury's true findings on the gang enhancements must be reversed because the trial

---

[1]    Undesignated statutory references are to the Penal Code.

1

court erroneously admitted "inflammatory" rap lyrics that were found in his jail cell. Alternatively, he contends the gang enhancements must be vacated and the matter remanded for retrial due to statutory changes made by recently enacted Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333) (Stats. 2021, ch. 699, § 3). He also contends that a remand for resentencing is required under recently enacted Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) (Stats. 2021, ch. 731), in conjunction with Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill 124) (Stats. 2021, ch. 695) and Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Assembly Bill 1540) (Stats. 2021, ch. 719).

The Attorney General agrees, as do we, that defendant is entitled to the retroactive benefit of Assembly Bill 333 and Senate Bill 567 (Assembly Bill 124) under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). Accordingly, we shall vacate the gang enhancements and remand to give the People an opportunity to retry the enhancements under Assembly Bill 333's new requirements. We also shall vacate the sentence on counts one and two and remand for resentencing in accordance with Senate Bill 567. In all other respects, the judgment is affirmed.

BACKGROUND FACTS AND PROCEDURE

On November 2, 2019, California Highway Patrol (CHP) officers on patrol in an unincorporated area of Fair Oaks, California, stopped defendant for driving a vehicle with expired registration tags. The officers subsequently arrested defendant on an outstanding warrant and called to have the vehicle towed for storage. Before the vehicle was taken, one of the officers conducted an inventory search inside the vehicle, but he did not search under the vehicle's hood.

A.  *Firearm evidence*

Defendant's vehicle was towed to a secure tow yard equipped with surveillance cameras. In the days thereafter, various persons, including two men and a female with a

baby, tried to get into the vehicle, each claiming to be the registered owner of the vehicle. The tow yard employees denied them access to the car.

A sheriff's deputy called the tow yard and expressed concern that someone might try to break into the vehicle. On the night of November 19, 2019, the owner of the tow yard was alerted by security cameras that someone was trying to break into the tow yard. To protect the vehicle, the owners of the tow yard attempted to move the vehicle inside their warehouse, but the vehicle would not start. When they opened the hood to charge the battery, they saw a black semiautomatic handgun near the car battery and called the police. The gun later was identified as a "Glock 19" handgun, loaded with an extended magazine and a cartridge in the chamber. The gun was not registered to defendant.

While defendant was in custody awaiting trial, he had several telephone conversations with a friend named "Quintin." The conversations were recorded and excerpts were played for the jury. During the conversations, defendant asked Quintin to find out where the vehicle was towed and to get "the thing" from the vehicle. Defendant made it clear that he wanted Quintin to act quickly because the vehicle was going to be sold at auction.

In a telephone call on the evening of November 18, 2019, Quintin informed defendant that he was going to "get his shit tonight," meaning that he was going to retrieve defendant's personal items from the vehicle, which included the gun. Defendant told him to "open up the thing," which Quintin understood to mean the vehicle's hood. Quintin then confirmed, "Do you want me to get the stuff . . . the hood; right[?]" About 1:30 the next morning, November 19, Quintin and another person went to the tow yard and attempted, unsuccessfully, to find the vehicle and retrieve the gun.

Months later, a sheriff's detective questioned Quintin about the incident. Quintin told the officer that he went to the tow yard as defendant requested because he "didn't want [defendant] to get a gun charge."

3

B.    *Gang evidence*

Sacramento County Sheriff's Detective Ruben Ledesma testified as a gang expert for the prosecution. He testified that the "Valley Hi Piru" is a criminal street gang associated with the Valley High area in South Sacramento. He testified that the signs and symbols associated with the gang include "VHP," a hand sign that spells out V-H-P, the color burgundy, and the numbers "78" (or "7800") and "55" (or "5500"). He indicated that Valley Hi Piru members refer to themselves as "Ru," which is short for "Piru." He explained that Piru members show disrespect to the Crips, a rival gang, by replacing the letter "c" with a different letter, such as "x," except when the letters "c" and "k" appear together, which stands for "Crip killer."

Detective Ledesma testified that he set up a pretext phone call with defendant through a fake social media account as part of an investigation into another Valley Hi Piru gang member. On the call, which took place in February 2019, a female officer pretended to be a person needing information about gangs for a paper that she was writing. The recorded conversation was played to the jury. During the call, defendant answered questions about the Valley Hi Piru gang, telling the officer that the gang's color is burgundy; that there are about 100 members in Sacramento; that there are five different subsets within the gang; and that he was part of the "hunnits mafia" subset, which was "strictly Valley Hi Piru." Defendant also told the officer that the gang sold "powder," meaning cocaine.

Investigators searched defendant's Facebook social media profile. Defendant's profile contained references to "Tyler Ru" and "Valley Hi Piru," and included the phrase, "No xut Hunnits Mafia striCKtly VHP WH78P." Defendant listed "sells drugs" as his occupation. Defendant's profile picture showed him wearing a necklace with a "78" pendant on it, and making the V-H-P hand sign.

In late November 2019, a sheriff's deputy conducted a search of defendant's jail cell. The deputy observed gang-related writing on the walls near where defendant slept,

4

including "Tyler Ru 78," "7800 Piru," and "VHP Hunnits mafia 7855 Piru no XUT." On the edge of defendant's bunk, the deputy found a bag with papers inside. The handwriting on the papers matched the writing on the wall. The papers appeared to contain rap lyrics, one of which was titled, "Ballad to 7800 [¶] By: Tyler Ru 7855 Bloxk." Excerpts of the lyrics were admitted at trial. They included numerous references to guns, gun violence, selling drugs, and the Valley Hi Piru gang. For example, one part of the lyrics stated, "Ghost gun with a switch and a drum can't be traced." Another part stated, "Empty the whole switch barrell steamin[,] leave a nigga brains on the street . . . ."

Detective Ledesma testified about the significance of the writings found in the jail cell. He explained that the writings demonstrated defendant was an active participant in the Valley Hi Piru gang, and that the lyrics described the gang lifestyle, which involved guns, drugs, and violence. Detective Ledesma testified that it would be life threatening for someone to present as Valley Hi Piru if they were not a gang member.

To prove the existence of a criminal street gang for purposes of section 186.22, the prosecutor offered the following predicate offenses.

On August 25, 2017, Leon Pringle was arrested for illegal possession of a stolen firearm. In response to questioning, Pringle told the detective that he was affiliated with Valley Hi Piru. Pringle was convicted for unlawful possession of a firearm based on the incident.

On April 23, 2016, Sacramento police attempted to stop Eddy Robinson for driving a vehicle with an expired registration tag. Robinson failed to stop and a pursuit ensued. At one point during the pursuit, Robinson threw a firearm out of the driver's side window. Later during the pursuit, Robinson rammed the officer's vehicle. Robinson was convicted for being a felon in possession of a firearm, assault with a deadly weapon on a peace officer, and evading a peace officer. Previously, during an August 2015 traffic stop, Robinson had admitted that he was a member of the Valley Hi Piru gang. The letters "V" and "H" were tattooed on Robinson's left forearm; the numbers "7" and "8"

5

were tattooed on his right and left hands, respectively; and the word "Piru" was tattooed on his chest.

Relying in part on these predicate offenses, Detective Ledesma opined that Valley Hi Piru is a criminal street gang because it is an ongoing association of three or more individuals, having a common name or common identifying sign or symbol, whose members collectively engage in, or have engaged in, a pattern of criminal gang activity such as the offenses committed by Pringle and Robinson. Detective Ledesma also opined, based on the totality of the circumstances, that defendant was an active participant in the gang. In response to a hypothetical matching the facts of this case, Detective Ledesma further opined that defendant committed the charged crimes for the benefit of the gang.

C. *Verdict and sentencing*

Defendant was charged in an amended felony complaint, deemed the information, with unlawfully carrying a concealed firearm in a vehicle, with special allegations that the firearm was loaded and that defendant was not the registered owner (§ 25400, subds. (a)(1) & (c)(6)—count one); and with unlawfully carrying a loaded firearm in public, with a special allegation that defendant was not the registered owner (§ 25850, subds. (a) & (c)(6)—count two). The information further alleged criminal street gang enhancements (§ 186.22, subd. (b)(1)) as to both counts.

Following a trial, the jury found defendant guilty of both counts and found the special allegations to be true. On February 19, 2021, the trial court sentenced defendant to the middle term of two years on count one, plus the low term of two years for the gang enhancement, for an aggregate term of four years. The court imposed an identical sentence on count two, but stayed its execution under section 654. On February 24, 2021, defendant filed a timely notice of appeal.

6

## DISCUSSION

## I

### *Assembly Bill 333*

After sentencing, but while this appeal was pending, the Legislature enacted Assembly Bill 333, which significantly modified the requirements to prove a gang enhancement under section 186.22, effective January 1, 2022. (*People v. Sek* (2022) 74 Cal.App.5th 657, 663, 665 (*Sek*).) Defendant argues that the amendments apply retroactively to his case, and that, because the jury convicted him under the prior version of the law, the gang enhancements must be reversed. The Attorney General agrees, as do we.

Section 186.22 provides for enhanced punishment when a person is convicted of an enumerated felony "committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1).)

Before the enactment of Assembly Bill 333, the statute defined a " 'criminal street gang' " as "any ongoing organization, association, or group of three or more persons, . . . having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol, and whose members *individually or collectively* engage in, or have engaged in, *a pattern of criminal gang activity*." (§ 186.22, former subd. (f), italics added; Stats. 2017, ch. 561, § 178.) To establish a "pattern of criminal gang activity," the prosecution needed to prove only that those associated with the gang committed two or more predicate offenses within a period of three years and that the offenses were committed on separate occasions, or by two or more persons on the same occasion. (*Menifee v. Superior Court* (2020) 57 Cal.App.5th 343, 362.) A predicate offense could be established by evidence of the charged offense and, in most cases, it was unnecessary to prove that the predicate offenses were gang

7

related.[2]  (*Menifee, supra*, at p. 362; *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822 (*Rodriguez*); *People v. Garcia* (2020) 46 Cal.App.5th 123, 165.)

Assembly Bill 333 increased the evidentiary burden necessary to prove a gang-related enhancement in several respects.  First, Assembly Bill 333 narrowed the definition of " 'criminal street gang' " to "an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity."  (§ 186.22, subd. (f), italics added.)  The statute now requires the prosecution to prove that two or more gang members committed each predicate offense.  (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477 (*E.H.*).)

Second, Assembly Bill 333 created stricter requirements to prove "a pattern of criminal gang activity."  Under the new legislation, (1) the last predicate offense must have occurred not only within three years of the prior predicate offense, but also within three years of the date of the currently charged offense, (2) the predicate offenses must have "*commonly* benefited a criminal street gang," and that benefit must be "more than reputational,"[3] and (3) the currently charged offense cannot be used as a predicate offense.[4]  (§ 186.22, subds. (e)(1)-(2), (g), italics added; *People v. Lopez* (2021) 73 Cal.App.5th 327, 345 (*Lopez*); *Rodriguez, supra*, 75 Cal.App.5th 822-823.)

---

**2**     Because the charged offense is required to be gang related (*People v. Albillar* (2010) 51 Cal.4th 47, 60), if the prosecution used the charged offense to establish one of the predicate offenses, the predicate offense was required to be gang related.

**3**     "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (§ 186.22, subd. (g).)

**4**     In addition, under the new legislation, the predicate offenses must have been committed by two or more gang "members," as opposed to "persons," and the list of qualifying predicate offenses is reduced.  (*E.H., supra*, 75 Cal.App.5th at pp. 477-478; § 186.22, subd. (e)(1).)  Further, new section 1109 requires the court to bifurcate the trial

8

The parties agree, as do we, that Assembly Bill 333's changes apply retroactively to defendant's case. Under *Estrada, supra*, 63 Cal.2d 740, absent evidence to the contrary, we presume that the Legislature intended such ameliorative changes to the criminal law to apply to all criminal cases not yet final on appeal. (*Id*. at pp. 744-746; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301; *People v. Nasalga* (1996) 12 Cal.4th 784, 792.) Assembly Bill 333 is an ameliorative amendment that increases the threshold for imposition of a gang enhancement. (*Lopez, supra*, 73 Cal.App.5th at p. 345; accord, *People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032.) Because Assembly Bill 333 is silent regarding retroactivity, under *Estrada*, we presume it applies retroactively to all nonfinal cases on appeal, including this one. (See, e.g., *Lopez*, at pp. 343-344; *Sek, supra*, 74 Cal.App.5th at p. 667.)

Here, it is undisputed that the evidence presented at trial was insufficient to prove the gang enhancements under the new law. The People did not present evidence to prove that the predicate offenses constituted "collective" criminal gang activity, or that the offenses commonly benefited the gang in a manner that was more than reputational. In addition, the jury was not prohibited from relying upon the currently charged offenses to establish a predicate offense, nor was it told that the predicate offenses must provide a common benefit to the gang that is more than reputational.

In sum, the jury was not asked to, and therefore did not make, the factual determinations that are now required to impose a gang enhancement under section 186.22. We therefore conclude that the gang enhancements must be vacated, and the matter remanded to give the People an opportunity to retry the gang enhancements under the amended law. (*E.H., supra*, 75 Cal.App.5th at p. 480; accord, *Lopez, supra*, 73

---

of any gang enhancement, upon the defendant's request. (§ 1109, subd. (a); Stats. 2021, ch. 699, § 5.)

Cal.App.5th at p. 346; *Sek, supra*, 74 Cal.App.5th at p. 669; *Rodriguez, supra*, 75 Cal.App.5th at p. 823, fn. 19.)

II

*Senate Bill 567*

On October 8, 2021, while this appeal was pending, the Governor signed Senate Bill 567, which altered the sentencing discretion under section 1170, effective January 1, 2022.[5] (Stats. 2021, ch. 731.) Relevant here, Senate Bill 567 amended section 1170, former subdivision (b), to create a presumption in favor of the low prison term whenever "youth" was a contributing factor in the offense.[6] (§ 1170, subd. (b)(6); Stats. 2021, ch. 731, § 1.3; see *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039.)[7]

Defendant argues that due to his age at the time of the offense (age 20), he meets the statutory criteria for the new presumption. He further argues that because his

---

[5] Three bills amending section 1170 were enacted and signed into law on the same date. (Stats. 2021, ch. 695, § 5 (Assem. Bill No. 124), effective Jan. 1, 2022; Stats. 2021, ch. 719, § 2 (Assem. Bill No. 1540), effective Jan. 1, 2022; Stats. 2021, ch. 731, § 1.3 (Sen. Bill No. 567), effective Jan. 1, 2022.) Senate Bill 567—which takes precedence because it was enacted last (Gov. Code, § 9605)—states that if all three bills amending section 1170 are enacted and become effective on or before January 1, 2022, and Senate Bill 567 is enacted last, then section 1.3 of that bill, which incorporates the amendments proposed by Senate Bill 567, Assembly Bill 124, and Assembly Bill 1540, shall become operative. (Stats. 2021, ch. 731, § 3.)

[6] A " 'youth' " is defined to include "any person under 26 years of age on the date the offense was committed." (§§ 1170, subd. (b)(6), 1016.7, subd. (b).)

[7] Specifically, section 1170, subdivision (b)(6) provides in relevant part: "Notwithstanding [section 1170, subdivision (b)(1)], and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6); Stats. 2021, ch. 731, § 1.3.)

judgment is not final, he is entitled to retroactive application of the amendments to section 1170. Thus, he contends we must vacate his sentence and remand this matter so the trial court can exercise its sentencing discretion in light of the new legislation.

The Attorney General concedes the change in the law is ameliorative and applies retroactively to defendant's case, requiring remand for resentencing. We accept the Attorney General's concessions. (See *Estrada, supra*, 63 Cal.2d at pp. 744-746; *People v. Flores, supra*, 73 Cal.App.5th at p. 1039.) Accordingly, we will vacate the sentence on counts one and two and remand for resentencing.

### III

### *Admission of Rap Lyrics*

Defendant also argues that the trial court violated Evidence Code section 352 and the due process clause by admitting the "rap lyrics" found in defendant's jail cell. Defendant argues that the rap lyrics should have been excluded because the evidence was more prejudicial than probative and it was cumulative of other, less inflammatory gang evidence.[8] He argues that the trial court's error in admitting the evidence requires reversal of the gang enhancements because, absent such evidence, it is reasonably probable that the jury would have found the gang enhancement allegations "not true."

In view of our conclusion that the gang enhancements must be reversed on other grounds, we need not reach this issue. The trial court is best suited to consider defendant's evidentiary objections in the first instance should the People elect to retry the enhancements.

---

[8]    Anticipating forfeiture, defendant alternatively argues that his counsel's failure to object to admission of the rap lyrics (1) should be excused because an objection would have been futile; or (2) constituted ineffective assistance of counsel.

11

## DISPOSITION

We reverse the findings on the gang enhancements and remand this matter to give the People an opportunity to retry the gang enhancements under Assembly Bill 333's new standard.  If the People decline to retry the gang enhancements, defendant shall be resentenced without reimposition of the gang-related enhancements.  We also vacate the sentence on counts one and two and remand for resentencing in accordance with Senate Bill 567.  In all other respects, the judgment is affirmed.


              KRAUSE           , J.


We concur:


      ROBIE           , Acting P. J.


      HOCH           , J.